M’Girk, C. J.,
delivered the opinion of the Court.
This was an action of debt brought on two bonds, made by certain persons calling themselves commissioners for the county of Washington. On the trial, under. the instructions given by the Court to the jury, a judgment of non-suit was suffered by the plaintiff. The defendant pleaded non est factum to the bonds, and the staute* of limitations to the counts on simple contract, and payment to the whole. On the issue of non est factum, the plaintiff gave in evidence an act of the General Assembly, passed in the year 1813, erecting and establishing the ceunty of Washington. By which act, it is provided that Lionel Brown, S: Perry, J. Hawkins, M. Ruggles and X Andrews, be and they are hereby appointed, commissioners, with full powers to point out and fix upon the most suitable and convenient place in the aforesaid coun *349 ty, for erecting a Court House and Jail thereon; and the place to he agreed on hy them, or a majority of them, shall he, and is hereby declared to he the permanent seat of justice for Washington County. The 4th section of the act declares, that the said persons are thereby declared to he commissioners of the Court House and Jail of the County of Washington, and they, or a majority of them, shall he, and they are hereby fully authorized and empowered to pui chase, or otherwise procure a title in fee simple for such lot of land as they, or a majority of them, shall judge most convenient for tbSSBaf "of the aforesaid public buildings, containing not less than fifty acres nor more than two hundred acres, and they are authorized to take and receive to them, their heirs, &c., a good general warranty deed, &c., in trust for the County of Washington ; provided, they shall not give more than ten dollars per acre for said land. They shall sell the lots on credit, not exceeding a year, or for cash, as they shall deem expedient for the good of the county, and they thall make deeds to the purchasers when the purchase money is paid, and the proceeds of such sale, after paying the purchase money, shall be by them applied and appropriated to carrying the objects of this act into full force and effect j and so soon as the commissioners herein named, shall have procured a sum which may hy them he deemed adequate to building a Court House and Jail, or either of them, by sale of the aforesaid lots, by gifts, subscriptions or donations, they are empowered to let the buildings aforesaid, or either of them, to the lowest bidder on such plan as they may deem proper. The 5th section, directs that the commissioners shall take an oath, and give bonds for the faithful performance of their duties. The condition of their bond is, that they will well and truly, faithfully and honestly, appropriate and dispose of all money, property, &c., which shall come into their hands as commissioners aforesaid, for the use of said county, to the sole use and benefit of said county; and that if there should be a balance in their hands, after accomplishing the objects of the act, then they will, under the direction of the County Court, pay the same over to the County of Washington. By the 5th seetion, they are also required to make settlement with, and render an account to the Couuty Court at each term. The 6th section provides for supplying vacancies. The 8th section provides for a final settlement with the County Court. It appears ajso by the record, that the commissioners did proceed to execute their duties; that they procured by gift of Moses Austin, 40 acres of land, and of J. R. Jones, 10 acres; that Austin made title to them of the 40 acres, but that before any title was procured from Jones, they laid the whole off into lots, and sold the same on a credit of 4, 8 and 12 months. That Jones refused to make title,, and never made any. It was also proved that in the year 1814, after the sale of lots, the commissioners let the building of a Court House to one Cravens, who failed ; that Cravens was sued on his bond, and that damages were recovered against him j they then, let the building of a Court House to Ruggles, the plaintiff) for $7,000 ; that Ruggles built the said house* and that in the yeas 1818 or 1819, the county began the use of the house as a Court House, and have ever since used it as such that the bonds sued on, were given hy the persons whose names are signed thereto for the last payment after the work was done. It also appears that some resignation took place and that the persons whose names are signed to these bonds, were regularly appointed, and were commissioners when they signed the bonds. It also appears by the record that on the 30th of January, 1817, the Legislature passed an act whereby they recited the fact, that the commissioners had only procured 40 acres of land on which they had fed, the seat of justice for Washington county. Itis therefore enacted that said location *350 shall be the seat of justice for Washington county, and that the same shall be as legal and permanent as if the commissioners had procured complete title to fifty acres of land. Upon this state of facts, the counsel for the county prayed the Court to instruct the jury, that the plaintiff could not recover 3 which instruction the Court gave, and a verdict was rendered for the defendant. This instruction is assigned for error. With a view to dispose of this case, we must attend to the objections made by the defendant’s counsel to the plaintiff’s right to recover. It is objected, that the commissioners did not pursue their authority, without which the deeds for the payment of the money were not the deeds of the County of Washington. The first specification under this head is, that the original act required the commissioners to procure fifty acres of land, whereas they only procured forty. And it is argued by Mr. Gamble, for the county, that tile subsequent act could not cure the defect, because the act is retrospective, and that the original contract with Ruggles was made before the act was passed; that it was void as against the county, and that the subsequent contract, or bonds being predicated upon it were void also. To- this it is answered by Mr. Bates, for the plaintiff, that the first act is merely directory to the commissioners, and that the main thing to be done by them was to locate a seat of justice and build public buildings, and that, if they failed to procure the quantity of land required, they are liable to the county on their bonds ; but if this position is not correct, then the act of 1817 cured the defect. It may be true that the plaintiff’s first position is correct. But we think the validity of this contract can with more safety rest on the amendatory act of 1817.
We are not prepared to admit that the Territorial Legislature of 1817, could pass retrospective law3 impairing the obligation of contracts, or impairing private rights y yet they had large powers given to them by the act of Congress of 1812, which says they shall have power to make all laws for the good government of the people. Now it is clear, that the good government of the people might require new counties to be laid off) and might require Court Houses and Jaiis to be built: they then were the fountain of authority on this subject; they were the guardians of the public good ; they gave authority here to procure 50 acres of land, and required the site should not contain less; but only 40 acres could be obtained in a suitable place, they then declare 40 acres will do.
Here no private right was infringed, but we find the county content on this subject j. we find her, by her officers, up to the time of bringing this suit, constantly recognizing the validity of the amendatory act, and the validity of the acts of (he commissioners as to the location of the seat of justice on the 40 acres, and the validity of the contract with Ruggles. As soon as the Court House is finished in 1818, or 1819, the County Court took possession of it, and have used it ever since as a Court House. They, for the benefit of the county, have had the use of the house for at least fifteen years, they then discover some supposed flaw in the original contract, by which they attempt to avoid payment to the builder; this looks like an after-thought, and is not entitled to the favor of law.
We think it is a settled rule of law as well as justice, that where an agent does any act for the use of his principal, and the principal enjoys the benefit and fruits of the act, it is too late afterwards for him to say, the act was not legal, or was not by his authority; a person may by matter ex post facto ratify the unauthorized acts of an agent: see to this point 2 Starkie on Ev. p. 58. We see no reason why the county, acting by her County Court, cannot do the same. We are of opinion the Coun *351 ty of Washington cannot avoid the payment of these bonds on this ground. The next specification of the objection that the commissioners failed to pursue their authority, is, that they were not authorized to build a Court House, and contract for the building the same, till they had funds sufficient by the sale of lots, gifts, and donations, to do so; and if they had not the funds, when they made the contract, the county could not be bound to pay for the work, and if they had funds, they were only authorized to charge those funds, so that the county could, in no event, be bound to pay for the work, or any part thereof. To sustain this point, the case of McClintocks v. Bryant et al, decided by this Court, is cited, 1 vol. Missouri Rep., 598. It is conceded by the plaintiff’s counsel, that if the case at bar is not distinguishable from the case cited, the decision ought to be against him. We will proceed to compare that case with this. In that case, it appears the defendants pleaded, that they were commissioners for the County of Montgomery, for the purpose of selecting a site for building a Court House and Jail, that they selected said site, laid the same off into lots, sold the same on credit, bargained for the building a Jail, and gave the notes sued on for the building the same, and for no other purpose; and that they never have had at any time, any of the money arising from that sale in their possession, &c. The note or bond, in that case, was signed by them as commissioners for the sale of lots in the town of Pinckney, which was an entire mis-description of their official character. The fourth section of the act erecting Montgomery county, provides that the lands acquired by them shall be laid off into lots, and shall be sold for ready money, or on a credit not-.to exceed twelvemonths; and that when the purchase money is paid, and not before, the purchaser shall have a title. The section then goes on and says, and the proceeds of such sale or sales, after paying the purchase money or price of such lands, shall be by them applied and appropriated, first to the building a sufficient Jail, and the remainder, if any, towards building a Court House.
The Court decided that the commissioners had not pursued their authority, because the law required them to have the funds in hand before they made any movement in respect of building a Jail; instead of this, they did not wait for that event, but as soon as the lots were sold, they, on the credit of the sale of (he lots, hired the building a Jail, and indeed their plea shows they never possessed the funds, for it says they had not at any time before that time received any funds from the sale of lots. The opinion goes on to say, “ the true and apparent construction of the act is, that the commissioners are not required to let the building, till they have received the money for the lots, because before that time there can be no proceeds.. If we take it then that the commissioners obeyed the act, they had the money when they let the Jail; and if they had it not, they ought to have had it^ because the law was so;” on the ground then that the Montgomery commissioners were entirely premature in building the Jail, the Court held they were liable, if they bad used words sufficient to charge them individually, and on that point there cannot well be any doubt. In the commencement of their bond, they call themselves commissioners for the sale of lots in Pinckney, a name unknown to the law under which they pretended to act; they signed the bond with their proper names. Let us now see what was the authority given by the act establishing the County of Washington: the act authorizes the building a Court House and Jail, or either of them, on the existence of certain things. The 4th section of the act, like the Montgomery act, requires the lots to be sold on credit, or for cash in hand, and requires payment for the *352 lots to he made before a title is made, and then it says the proceeds of such sale oi sales, after paying the purchase money, shall be by them applied and appropriated to carrying into effect the objects of the act. So far, the exact application of the proceeds have not been pointed out, so far the Legislature clearly intend the commissioners shall get the money for the sale of lots; but they do not at once declare as they do in the act of erecting Montgomery county, what shall be done with those proceeds. Now comes the power in the Washington act to build a Jail and Court House. It is declared thus : “and as soon as the commissioners shall have procured a sum which may by them be deemed adequate to building a Court House, a Jail, or either of them by the sale of lots, by gifts, subscriptions or donations, they are hereby authorized and empowered to let the building aforesaid, or either of them, to the lowest bidder, giving thirty days notice of the time of letting and of the plan,” &c. Here we think is a striking difference between this case and the case of Mc-Cliutocks v. Bryant et al.
The act in this case relies entirely on the judgment and honesty of the commissioners; they are the judges of the kind of Court House wanted for the county; they also are the judges whether the sum they rely on is sufficient to accomplish the object; the estimate is to be made on a sum procured by the sale of lots, and not on the money raised and collected from the sale. Now, if in this they err, it is not to be supposed they would be guilty of perjury under their official oaths, or he liable for such error on their official bonds; the matter is referred to their judgment and honesty. But it is argued, that “ procure” in the act means, that they must have the money in possession, before they can proceed to make the contract. This argument can hardly be sound; when we look at the means put in their power, we know from the nature of such things, the Legislature could hardly expect the money to be in their possession before they might lawfully begin to build; the first thing to he done by them is, to sell the lots on a credit of not more than twelve months; out of this sale fund, they must, first of all pay for the land; when that is done, they must begin to consider what sort of a Court House is wanted, then the fund remaining by the sale of the lots, and also the fund which may have been raised or promised by subscription and donation, if their judgment satisfies them that the sum is sufficient, then they may begin to build. Now in this case, as a part of the sum, and indeed the whole of it, might have been procured by subscription, it would be difficult to tell before hand, how much would he actually paid when wanted. Subscriptions to such objects are not usually paid when the subscription is made, hut usually the payment is postponed till the object of the subscription makes the payment of the money necessary, and then it is often found difficult to make the collection ; this mode of raising money, precarious as it is, has been by the Legislature given to these commissioners, to found their estimate on; whether they did found any part of their estimate on subscriptions and donations, the record does not show. Mr. Brieker says they founded their estimate on the lots sold in the 40 acres, and also on the lots sold in the ten acres, and on a judgment recovered against a former undertaker, who failed, and on the lots unsold before they let to Ruggles. What the sale of Jones’ lots would amount to, what the other sales would amount to, and what was the amount of the judgment does not appear, hut the witness says the whole amounted to more than Ruggles’ bid. The precise value of the fund they made their estimate on, does not appear, nor is it necessary it should appear; we cannot now *353 decide the question whether they erred or not in their judgment. The Legislature put the power to hire the building the house on the judgment and estimate of these men, and whether they erred or not is not the question; but the question is, had they when they made the contract, procured a sum which they thought sufficient; if they had, then they pursued their authority.
In this case the county of Washington is the principal, the commissioners the agents ; we believe where the principal refers any act to the discretion or judgment of his agent, and the agent acts erroneously as to judgment or discretion, yet the principal is bound. The commissioners who made this contract, were emphatically the agents of the county; they were not the same appointed by the Legislature, but were appointed by the County Court. But it is argued by counsel, that by the terms of this law, the commissioners were required to.have the cash in hand before they had any power to let the building, because the act says, when they shall procure a sum which they may deem sufficient, &e.; and they insist that ieprocure” here means that the money must be in their hands. We think this interpretation of the statute is not the correct one.
We must understand and interpret the words used by the Legislature in reference to the context and subject matter. Viewing this matter in reference to the subject matter, it will stand thus: the commissioners were to build a court house when their judgment should dictate the means were competent to the end ; that judgment they passed; means may in common parlance well be said to be procured,when solvent men's notes are m hand, payable within the time when the money was to be paid to the builder; and they were authorized to predicate their judgment on subscriptions too; a subscription of $500 or $50 made by a solvent and punctual man might be considered as so much procured; now if these things existed to the extent of the money promised for the work, we think the commissioners might well begin the building; and if they did not exist in fact, yet the commissioners might think tl ey did, and then they might begin to build. There is no pretence, however, that the commissioners acted without some reasonable foundation to go on. The evidence is, that they made a pai't of their estimate on lots sold by them which did not belong to them; but the evidence further is, that the whole estimate exceeded the amount hid by Ruggles, how much is unknown; it might have been for a small amount or alai ge one, yet that makes no material difference, as they were constituted the sole judges of the adequacy of the fund, responsible on their bonds to the county for malfeasance if they acted corruptly, and responsible,to the criminal justice of the country for perjury. It appears also that they had large funds raised in some of the modes pointed out by the statute. Ruggles bid the building off'at $7,000, he completed the work, has been paid ali except $1,000 deducted for a bad chimney, and $1,070 now due ; so that they have actually paid out of some fund for the use of the county about $5,00C. The present suit is for the balance; can it be competent for the county, after fifteen or sixteen years enjoyment of the fruits of this contract made by their agents, to deny the legality of the very contract which gave her this house so long? We think that it is not.
If this contract on the part of the commissioners had even been illegal in the beginning, yet when the county recognize the validity of the contract by using the house so long without objection, she makes the contract good.
The same rule before referred to in Starkie’s Evidence, applies here, to-wit: that the principal may recognize an authority by matter ex post facto, and make the act *354 his own. See 2 Starkie’s Evidence, pp. 58, 59. Upon this ground, this case, we think, is clearly distinguishable from the case of McClintocks v. Bryant et al; there nothing was left to the judgment of the commissioners, except as to the quality of the jail they would build, and having fixed that, they were required positively to have the fund in hand, which they acknowledged they had not, before they could make any contract for the jail. Also in that there was no evidence of subsequent recognition of the contract. In this case, the evidence is abundant. Several cases have been cited by counsel on both sides as to the general principle governing where public agents are and are not liable individually ; there is no mistake about the general principle, but it does not, in bur opinion, conflict with tho plaintiff’s right to recover. The judgment is reversed and remanded, with directions to set aside the non-suit and grant a new trial.