————o————

Thomas S. Moreman, Appellant, *vs.* P. H. Talbott, Respondent.

1. *Land and land titles—Improvements on property—Claimant standing by and permitting—Courts of equity will not interfere, when—Estoppel.*—Where one claiming the title to land is guilty of gross laches, and with full knowledge of his own claim allows the opposite party to expend his money, or waits until the property has largely increased in value, either from this or other causes, before asserting his rights, courts of equity are very reluctant to interfere, although there may be no bar of the statute.

*Appeal from Nodaway Circuit Court.*

*Johnston & Royal, and G. D. Burgess,* for Appellant.

I. Appellant is not estopped by anything he said or did prior to or at the time of the sale of said land under the County Court judgment.

To constitute an estoppel *in pais*, the act or admission relied upon to have that effect, must be the moving cause and

inducement, in the absence of which the party setting it up would not have done that upon which he claims the estoppel. (Hill vs. Epley, 31 Penn. St., 334; 2 Washb. R. P. [2nd Ed.], 459, § 9a, to ref. 5.)

The cases, says Mr. Washburne, all agree in this, "that no man can set up another's act or declaration as a ground of estoppel, unless he has been misled or deceived by such act or declaration; nor can he set it up where he knew or had the means of knowing the truth of the act or declaration in his own power." Both Roseberry and Talbott had knowledge of Moreman's interest, and were fully advised of the true state of the title. (2 Washb. R. P. [2nd Ed.], 460 § 9a; 2 Sm. L. Cas. 6 [Am. Ed.], 768.)

To enable a man to set up title by estoppel, he must have been ignorant at the time of his purchase of the true state of the title, and also been without the means of ascertaining it by a reference to the records. (Rice vs. Bunce, Adm'r, 49 Mo., 231; Wood vs. Griffith, 46 N. H., 237; Grove vs. White, 20 Wis., 430; Hill vs. Epley, *supra;* Herm. Est., p. 421, § 422; Titus vs. Morse, 40 Me., 348; Hill vs. Mossman, 11 Ohio St., 42.)

II. No time short of ten years adverse possession will bar in such case as the present, as equity acts in analogy to the law. (Ward vs. VanBokkelen, 1 Paige Chy., 100; Angel on Lim., [6th Ed.], §§ 25, 26, 382; McNair vs. Lott, 25 Mo., 190; 20 Mo., 93, 94, 95; Sto. Eq. Pl. [2nd Ed.], § 757; 50 Mo., 102, 103; *Id.*, 445.)

*Allen Vories*, for Respondent.

I. If a party by his words or conduct, as in the present case, induce another to lay out his money and expend his means in the purchase of lands, which he would not have done otherwise, then such party is "estopped" by his own conduct. (Clark vs. Huntsucker, 12 Mo., 333, 339, 340; Highley vs. Barron, 49 Mo., 103 ; Rice vs. Bunce, Adm'r, 49 Mo., 231, &c., and authorities there referred to ; Chouteau, &c., vs. Goddin, &c., 39 Mo., 229 ; Newman vs. Hook, 37 Mo., 207 ; Rutherford vs. Tracy, 48 Mo., 325.)

NAPTON, Judge, delivered the opinion of the court.

This was a proceeding to have defendant declared a trustee for plaintiff, as to the title to a tract of land in Nodaway county, and to compel a transfer of the defendant's legal title to plaintiff. .

Most of the facts in the case are undisputed. It appears from the pleadings and evidence, that one Davis bought a quarter-section of the 16th section at one dollar and a quarter per acre, on the 30th of October, 1856, at a sale by the sheriff made by order of the County Court, and received the sheriff's certificate to this effect ; that upon payment of the purchase money he was entitled to a deed ; that Davis' note or bond for the purchase money, with one Roseberry as his surety, was not executed until 1858 ; that on the 24th of February, 1857, Davis, before the execution of any note or bond to the county, so far as appears, and certainly before the payment of any part of the purchase money, executed a fee simple deed with warranty, of the land to the plaintiff, who then lived in Kentucky, and this deed was duly recorded in Nodaway county on the day of its date.

It appears that the note or bond given by Davis and Roseberry, remained unpaid until 1864 ; the plaintiff in the meantime having removed from Kentucky to Nodaway county some time in 1859, and the County Court at the instance of Roseberry (who was surety for Davis), treating the note as one for school money and coming within the provisions of the 29th section of the second article of the act concerning Common Schools (R. C. of 1855, p. 1425),entered a judgment against Davis and Roseberry for the principal and interest of this note, then amounting to over $300 ; and an execution was levied on the land, and the land bought at this sale by Roseberry and defendant, Talbott. The purchase money was then paid to the county, and the County Court thereupon directed the Clerk to make report to the Register of Lands of the sale to Davis, and to report Roseberry and Talbott as his assignees. And accordingly, a patent was issued from the State to Roseberry and Talbott. The defendant, Talbott, ultimately bought out the interest of Roseberry.

It appears, that after the removal of plaintiff to Nodaway, in the Spring of 1859, all the parties to this transaction lived in that county; that Davis did not leave the county until 1864, and at that time was apparently in good circumstances pecuniarily.

It appears that Roseberry and Talbott were fully apprised of the deed from Davis to plaintiff, and that plaintiff was equally cognizant of the fact that Davis had not paid for this land, and of all the proceedings of Roseberry, the County Court, the sale under execution, and the purchase by Roseberry and Talbott.

In 1863, Roseberry spoke to the plaintiff in regard to this note of Davis', and the necessity of plaintiff paying it off in order to get the title from the State; but the plaintiff refused to do so, declaring that he had already paid much more than the land was worth, and that Davis had swindled him, and he would sue Davis on his warranty. Roseberry told the plaintiff, that to save himself as surety of Davis, he would be obliged to buy in the land at the sale, unless he, the plaintiff, would do so; but the plaintiff declined and did not attend the sale, or if he did, made no bid for the land. The defendant, Talbott, also had repeated interviews with plaintiff before he bid at the sheriff's sale, and told the plaintiff he would not buy if the plaintiff desired to bid. Talbott knew nothing of the orders of the County Court, but, as he says, owning some land adjoining, he was induced to buy by the repeated assurances of the plaintiff. There is nothing contradictory of these statements by the defendant, Talbott, and Roseberry, from whom he purchased, or in the testimony of plaintiff, who was examined as a witness. The main facts are admitted or not denied, though the plaintiff does not remember all the conversations, and does not admit everything said by the defendant, and the witness, Roseberry.

It may be remarked, that all the allegations in the petition concerning fraudulent combinations and devices on the part of the defendant and Roseberry, and the County Court and Clerk, are utterly without foundation. There was no evi-

dence whatever offered tending to show the slightest appearance of fraudulent intent or fraudulent acts on the part of any one concerned in the matter.   After all the evidence had been heard, the court dismissed the petition, and this judgment is brought here for review.

This suit, it may be here remarked, was commenced in 1871, fifteen years after the sale to Davis, and fourteen years after Davis' deed to plaintiff.

It may be conceded that the proceedings in the County Court on Davis' note were not authorized by the statute, that the judgment, execution, levy, sale and deed, were all nullities; though we do not mean to declare that the judgment was, since it is not entirely clear, that the court could not have treated this note for school land as belonging to the school fund of the township, and therefore subject to be enforced in the same prompt manner as loans of the school fund could be.   The levy, sale and deed of sheriff were undoubtedly void, as Davis had no interest in the land either equitable or legal.   We have not however examined this matter sufficiently to venture any opinion in regard to the judgment, because we regard all these facts as beside the case and totally immaterial.

The leading and important facts are, first:   That Roseberry and Talbott, paid the purchase money, and received the patent from the State, and have now the legal title.   What was the equity of the plaintiff on his deed from Davis?   He can only occupy the same place that Davis did, and Davis had merely bid $200 for the land, and got a certificate from the sheriff to that effect, which assured him of a conveyance from the State, when this purchase money was paid.   He does not pretend that he ever paid this purchase money or any part thereof, nor that his grantor Davis, did.   On the contrary, the facts and pleadings show that neither of them ever paid any part of this purchase money, but that Roseberry and Talbott did, though perhaps, in an irregular and informal way; and it appears clearly, not only that plaintiff did not pay any part of this purchase money which enabled the defendant to get a patent, but that he positively refused to do so.

The plaintiff could surely have no standing in a court of equity unless he tendered or offered to pay the $312.00, and interest. That would be nothing more than the leading maxim in equity. Courts require that one asking for equity, must himself first do what is equitable, and this would certainly be to repay the expenditures of defendant, made on the faith not merely of plaintiff's words, but of his acts. But apart from this failure to offer to pay defendant the purchase money he advanced, we think there are other fatal objections to this petition which authorized the court at the hearing, to dismiss it. The laches of the plaintiff in this case is inexcusable, and is not favored by courts of equity. Fourteen years passed from the date of his deed, and seven years passed after the acquisition of title by the defendant, and this, with a full knowledge on the part of plaintiff of all the facts on which the application for relief is now based. Undoubtedly, where a complainant is ignorant of the facts upon which his right is based; where he has used ordinary diligence to discover them; where his adversaries have managed to conceal them, or where frauds have been perpetrated which he did not sooner discover, a certain degree of delay may be excused, and will not prevent the courts from affording relief. I am not speaking of the statute of limitations, but where a party is guilty of gross laches and allows the opposite party to expend his money, or waits until the property has largely increased in value, either from this expenditure or other causes, courts of equity are very reluctant to interfere, although there may be no bar of the statute.

Here, seven years passed after Roseberry and Talbott bought this land and procured a patent from the State for it, and not a word is said by the plaintiff until this suit is brought. Plaintiff and defendant and Davis all lived in the same county. The condition of the title was known to all of them. This delay would tend to show that the reported statements of plaintiff to Roseberry and Talbott, were true, and that the plaintiff did expect to rely on Davis' warranty, and did not intend to look to the defendant for redress. This suit seems to have resulted from a recent change of determination,

perhaps occasioned by the hopeless insolvency of Davis, which however occurred subsequent to the acquisition of title by Roseberry and the defendant.

The subject of estoppel is extensively discussed in the brief filed in this case. The facts certainly are very similar to those in the case of Huntsucker vs. Clark, 12 Mo., 333; but we think it unnecessary to express any opinion on this point.

The fatal objections to the suit are that no offer is made to pay the purchase money, and that the laches of the plaintiff under the facts and circumstances of the case, precludes his right to any aid from a court of equity.

Judgment affirmed. Judge Vories not sitting, the other judges concur.