161    625
95a ⁹ 86

### WALL, Appellant, v. BEEDY et al.

#### Division One, March 29, 1901.

1. **Preference: HINDERING OTHER CREDITORS: GRANTEE'S KNOWLEDGE.** A deed made by the owner of a farm to the president of a bank, in discharge of a debt owing such grantee, and of other indebtedness due the bank, and of a judgment lien and a prior mortgage, aggregating about the value of the land, if received by such grantee in good faith for such purpose, is a valid preference, notwithstanding it operates to hinder and delay other creditors and the grantor intended that it should have that effect. Mere knowledge of such intent by the grantee is not sufficient to avoid the transaction; in order to have that result he must have actually participated in the grantor's fraudulent purpose.

2. ————: **RULE: ASSUMPTION OF ANOTHER'S DEBT.** A debtor may prefer one creditor over another by direct payment or transfer of property, provided the property is taken in satisfaction or assumption of a just demand, and not as a mere screen to secure the property to himself.

3. ————: ————: **PURCHASE FROM INSOLVENT DEBTOR.** A transfer of property as a preference by an insolvent debtor to one or more creditors in payment of a bona fide indebtedness, is governed by entirely different rules than those which apply to an ordinary pur-

Vol 161 mo—40

Wall v. Beedy.

chaser from an insolvent vendor.· In the case of a purchaser from an insolvent vendor, the purchaser's knowledge of the fraudulent intent on the part of the vendor makes the sale voidable at the instance of other creditors of the vendor, even though the purchaser did not actually participate in that purpose. But in the case of a preference, the grantee's knowledge of the grantor's intention to delay and hinder other creditors, unless he actually participates in that intent, does not affect the transaction. And where no more property is conveyed to the preferred creditor than is sufficient to pay his own debts and those of others which he assumes to pay, there is no participation in the debtor's fraudulent purpose.

4. ———: GOOD FAITH: BURDEN. The burden of proving the good faith· of the transaction whereby a defendant became a preferred creditor is not on him. The burden of proof rests on the party assailing the transaction as fraudulent. Nor is that burden shifted by a showing that the grantor's purpose was to fraudulently hinder his other creditors.

5. ———: CONSPIRACY TO DEFRAUD: EVIDENCE. A conspiracy to defraud one's creditors can not be shown by the declaration of one of the supposed conspirators.

6. ———: FRAUD: PROOF: CONSIDERATION EXPRESSED IN DEED. Where the amount of indebtedness assumed and paid by the grantee in a ` deed is equal to or greater than the actual value of the land, it is no evidence of fraud that the expressed consideration for the deed was really larger than the amount of such indebtedness.

7. ———: ———: ———: REMAINING IN POSSESSION. Where the grantor in a deed of preference continues to remain in possession of the land, that fact, unexplained, tends to show a lack of good faith in the grantee. But where he pays the grantee a fair rent, and this is applied in paying taxes on the land and interest on the indebtedness assumed by the grantee, the grantor's remaining in possession is no evidence that the transfer was fraudulent on the part of the grantee.

8. ———: ———: ———: TAX LISTS. Tax assessment lists made out by an assessor against the grantor in a preference without consulting him, but signed by him without knowing the property conveyed to the preferred creditor was included therein, if the preferred creditor knew nothing about the matter, but actually paid the taxes, are no evidence of a fraudulent preference.

Wall v. Beedy.

9. ———: ———: ———: WITHHOLDING DEED FROM RECORD. Where the deed of preference is withheld from record without any agreement or understanding between the parties thereto to that effect, but by a mere oversight or neglect on the grantee's part, and no other creditor gives the maker credit on the faith that he was the owner of the land, and there is no circumstance connected with the failure to file it from which fraud can be inferred, such withholding is not fraudulent.

10. ———: ———: LACHES. Plaintiff lived in the neighborhood where the farm was located, and nine years after the deed was made under which the defendant claims the land, brought this suit to set that deed aside as fraudulent. He claims he knew the deed was fraudulent all the time, but did not bring the suit until the building of a railroad increased the value of the land to nearly twice the consideration mentioned in the deed. *Held*, that plaintiff was guilty of such laches as precluded his recovery, even though the transaction was fraudulent.

Appeal from Pettis Circuit Court.—*Hon. George F. Longan,* Judge.

AFFIRMED.

*W. S. Shirk* and *S. T. White* for appellant.

(1) The evidence shows, beyond cavil, that Wherry's intent in making the conveyance was fraudulent. This requires the defendents to make clear proof of the payment of the consideration. This defendants have wholly failed to do, but instead, have shown themselves masters of the art of evasion. Ins. Co. v. Smith, 117 Mo. 261; Leeper v. Bates, 85 Mo. 224; Henderson v. Henderson, 55 Mo. 534; Cass Co. v. Green, 66 Mo. 498; Pomeroy v. Benton, 77 Mo. 64; Marbury v. McClurg, 74 Mo. 591; Bent v. Lewis, 88 Mo.463; Baldwin v. Whitcomb, 71 Mo. 651. (2) According to defendant's own evidence the deed recites a false consideration. This is, of itself, a badge of fraud, and in fact vitiates the whole transaction.

State ex rel. v. Hope, 102 Mo. 429; Benne v. Schenecke, 100 Mo. 256; Leger v. Thomas, 107 Mo. 635; Tube Works v. Ring Co., 118 Mo. 365; Roland v. Ross, 120 Mo. 208; Waite on Fraud. Con., sec. 208; Brink v. Hites, 84 Pa. St. 253. (3) Wherry transferred all of his property to the defendants, not even reserving to himself property exempt by law. This was a badge of fraud, not explained by defendants' evidence. Gordon v. Ritenour, 87 Mo. 60; Benne v. Schenecke, 100 Mo. 251; (4) Wherry retained possession, personally, of the farm for six years—from 1886 to 1892—and through tenants whom he procured, and from whom he collected the rent until the end of 1895, three years longer, all the while exercising acts of ownership. He held possession of all the personal property, and disposed of it, even paying his own debts with it. Stewart v. Thomas, 35 Mo. App. 208; Yates v. Yates, 26 N. C. 147; Johnson v. Dick, 27 Miss. 281. (5) Wherry collected the rent from tenants as stated by the witnesses Stone, Freeman, Smith, Harris, Reams and Russell. This was indicative of a secret use. (6) The Williamson transaction is indicative of the fraudulent character of this transaction. Leavitt v. Laforce, 71 Mo. 353. (7) The first use made of the deed was to defraud parties giving credit to Wherry from the time it was made until it was recorded. It was made and acknowledged November 3, 1886, and not recorded until November 12, 1886. Bank v. Doran, 109 Mo. 40; Wash v. Chambers, 13 Mo. App. 309; Bank v. Buck, 123 Mo. 153; Waite on Fraud. Con., 238. (8) Wherry's declarations subsequent to the conveyance, as to the ownership of the farm, etc., were competent. Cowes v. Shrader, 61 Mo. App. 63; Holmes v. Braidwood, 82 Mo. 615; Dillon v. Choteau, 7 Mo. 386; Carnahan v. Wood, 2 Swann (Tenn.), 502; Oats v. Brown, 59 Ga. 715. (9) The contract by Beedy, after he got the whole title in himself, to convey to Mrs. Wherry is strong evidence of fraud. Patton v. Bragg, 113

Mo. 595; Smith v. Ham, 51 Mo. App. 433; Sloan v. Torrey, 113 Mo. 623; Potter v. Adams, 125 Mo. 118. (10) After liens against the farm were paid off, Beedy failed to have them satisfied, so as to keep the property covered up. The judgment in favor of the Johnson County Savings Bank was paid in 1887, and left unsatisfied. The McFadden deed of trust was paid July 5, 1888, and left unsatisfied of record. This is evidence of fraud. (11) Direct evidence of fraud is not necessary. Massey v. Young, 73 Mo. 260; Hopkins v. Stewart, 58 Mo. 201; King v. Moore, 42 Mo. 551; Embury v. Klein, 30 N. J. Eq. 523; Blue v. Peirston, 27 Mo. 272; Railroad v. Hoge, 34 Pa. St. 211. (12) This conveyance cannot be treated as a conveyance to prefer a creditor. To permit this to be done, would be to tolerate a departure from defendants' answer. Besides, there is no evidence to support it. The answer alleges that defendants bought the land at $20 per acre and paid for it. The evidence and judgment must be based upon the allegation in the petition or answer. One cannot state one cause of action or one defense, and recover upon another. Trimble v. Stewart, 35 Mo. App. 537; Cabanne v. Skinker, 56 Mo. 537; Clements v. Yeates, 69 Mo. 623; Field v. Railroad, 76 Mo. 614; Gurley v. Railroad, 93 Mo. 447. And the usual badges of fraud apply to cases where it is claimed the consideration was the payment of prior indebtedness, as well as the payment of a present purchase price. Shelby v. Booth, 73 Mo. 77; State ex rel. v. Mason, 112 Mo. 379. And the same exact principle is recognized in every case of fraudulent conveyance, and conveyance for the purpose of giving a preference.

*O. L. Houts* and *Charles E. Yeater* for respondents.

(1) (a) The transfer of the farm was a preference and

not a sale, and plaintiff, to recover, must show: 1st, that Wherry made the transfer with a fraudulent intent; 2nd, that Beedy knew of such intent at the time; and, 3rd, that in addition, Beedy took the transfer for the purpose of assisting Wherry to defraud his creditors. (b)  This being the law of this State, there is no burden of proof on the defendants to show a valuable consideration, but the burden of proof on every issue of fact in the case rests upon the plaintiff, and having alleged fraud, he must prove it by a preponderance of the testimony. Shelly v. Booth, 73 Mo. 77.; Sexton v. Anderson, 95 Mo. 379; Deering & Co. v. Collins & Son, 38 Mo. App. 79; State to use v. Mason, 112 Mo. 380; Alberger v. White,. 117 Mo. 363; Smit v. Straus Saddlery Co., 64 Mo. App. 120; Boot and Shoe Co. v. Bain, 46 Mo. App. 591; Morgan v. Wood, 38 Mo. App. 264; Bump on Fraudulent Con., secs. 167, 168 and 170; Albert v. Besel, 88 Mo. 152; Nichols v. Ellis, 98 Mo. 344; Milling Co. v. Burns, 152 Mo. '376; Crothers v. Busch, 153 Mo. 606; State ex rel. v. Hope, 120 Mo. 428; Bump on Fraudulent Con., sec. 177 and 611; Albert v. Besel, 88 Mo. 153; Deering & Co. v. Collins & Son, 38 Mo. App. 78; Pettingill v. Jones, 30 Mo. App. 283; Holmes v. Corbin, 34 Mo. App. 396.  (2)  Where a transaction is as compatible with honesty as dishonesty, the law must presume it to be an honest transaction.   Bank v. Worthington, 145 Mo. 91; Chapman v. McIlwrath, 77 Mo. 44; Dellam v. Renshaw, 26 Mo. 544; Webb v. Darby, 94 Mo. 629; Ridge v. Greenwell, 53 Mo. App. 483; Bump on Fraudulent Con., sec. 615; Robinson v. Dryden, 118 Mo. 539.  (3)  No legal foundation showing a conspiracy involving Beedy was laid, and all the testimony concerning the alleged statements and admissions of Wherry were incompetent, and all such testimony should be refused.   Nasse v. Algermissen, 25 Mo. App. 189; Holiday v. Jackson, 30 Mo. App. 265; State v. Pratt, 121 Mo. 572; Latham v. Agnew, 70 Mo. 50; Williams v. Casebeer,

53 Mo. App. 644; Benne v. Benne's Ex., 56 Mo. App. 504; Bump, sec. 598. (4) Plaintiff charges that Beedy suffered Wherry to remain on the farm without paying rent, and that Beedy agreed afterwards to convey the farm to Wherry's wife for nominal consideration. The evidence shows both these charges untrue, but even if both be true Beedy's title is not affected thereby. Clark v. Cox, 118 Mo. 659; Thompson v. Cohen, 127 Mo. 228; Gutzweiler v. Lachman, 28 Mo. 437. (5) Beedy's title under Wherry's deed, which was unrecorded only nine days, is good against any of the latter's creditors and particularly against plaintiff's execution deed, made eight years afterward, and based on a judgment subsequent to the record of the deed. Bank v. Rohrer, 138 Mo. 369; Hord v. Harlan, 143 Mo. 469. (6) The estimates of the undisputed witness fix the value of the farm at the date of the transfer at $6,400, but it was subject to incumbrances aggregating $3,593.24, and the transaction was merely the transfer of an equity of redemption worth $2,820.40, for which Beedy shows full value was given, but it would not have been a fraud upon creditors if the amount paid for the land had been fifteen hundred dollars less than its value. Bank v. Guthrey, 127 Mo. 193; Baker v. Harvey, 133 Mo. 653; Macke v. Byrd, 131 Mo. 682. (7) The plaintiff is guilty of laches in bringing this suit and offers no valid excuse therefor, since he admitted that he and the judgment creditor under whom he claims, thought the transfer was a fraud at the time and waited nine years to begin proceedings; Beedy in the meanwhile during such period of nine years, was paying first the existing incumbrances of $3,593.24 on the farm, and afterwards the $2,500 note assumed in bank. Consequently plaintiff has no standing in a court of equity. Kelly v. Hurt, 74 Mo. 565; Bliss v. Prichard, 67 Mo. 181; Kroenung v. Goehri, 112 Mo. 648; Lewis v. Land Co., 124 Mo. 687; Moreman v. Talbott, 55 Mo. 397; Landrum v. Bank, 63 Mo.

56; Lackland v. Smith, 5 Mo. App. 153; Kline v. Vogel, 90 Mo. 247; Burgess v. Railroad, 99 Mo. 508; Hatcher v. Hatcher, 139 Mo. 614; Joyce v. Growney, 154 Mo. 263; Hallett v. Collins, 51 U. S. (10 How.) 174; Wagner v. Baird, 48 U. S. (7 How.) 258; Kialy v. McGlynn, 88 U. S. (21 Wall.) 503; Washington v. Opie, 145 U. S. 214; Leggett v. Standard Oil Co., 149 U. S. 287.

ROBINSON, J.—This is a suit in equity, instituted on October 14, 1895, to set aside a deed to 320 acres of land in Johnson county, executed on November 3, 1886, by defendant Wherry and wife, to S. S. Chappell and J. R. Chappell, and the defendant Beedy, and the conveyance by S. S. Chappell and J. R. Chappell, on December 18, 1889, to Beedy, of their interest therein, and vest title to the same in plaintiff, on the ground that such deeds were obtained as the fraudulent conspiracy between Wherry, Beedy and the two Chappells, to hinder and delay the creditors of the former.

The trial resulted in the dismissal of the plaintiff's bill, and plaintiff appealed.

The great mass of evidence set out in appellant's abstract of the record, represents the testimony of a large number of witnesses, some of whom were examined and cross-examined twice or more, and page after page bears lightly, or not at all, upon the material issues involved. To review this testimony exhaustively would require time, labor and patience happily not necessary to the proper disposition of this case. The facts necessary to a correct understanding of the questions involved in this appeal, may be stated as follows: In November 1886, and for some time prior thereto, defendant Beedy was engaged in the banking and lumber business, at Windsor, Missouri, and the two Chappells and Wherry were in the stock business, residing several miles from town. Shortly before the first conveyance by Wherry and wife in November, 1886, Beedy,

who it seems was president of the Windsor Savings Bank, became solicitous about Wherry's indebtedness to the bank, consisting at that time of five notes, amounting in the aggregate, exclusive of interest, to the sum of $2,478.65, and desired to obtain additional security therefor. The two Chappells were indorsers on the notes. Wherry was security for one of the Chappells on a note to Beedy's bank also, and all three were heavy borrowers in the other local banks. The two Chappells and Wherry were each supposed to be worth about $10,000, but their farms were all under mortgage. At the suggestion of Beedy, S. S. Chappell notified Wherry to call at the bank and make some arrangement about giving additional security for his bank indebtedness. In course of the interview between Beedy and Wherry, in reference to such security, Beedy first learned of the existence of a mortgage to John McFadden, on the farm in controversy, amounting with interest thereon to $2,246.36, and also a judgment against Wherry in favor of the Johnson County Savings Bank, for $1,260.37, including interest which, together with the taxes of 1886, amounting to $66.51, brought the total amount of incumbrances on the farm up to about $3,593.24. The evidence shows that at the date of the conveyance in November, 1886, the farm was only worth about $6,400. On this basis, Wherry's equity in the farm after deducting the lien indebtedness, was worth about $2,800. In addition to his indebtedness to the bank, Wherry owed Beedy individually $320, evidenced by a note upon which he and L. E. Chappell, a younger brother of the other two Chappell's were joint makers. As a result of these negotiations, Wherry finally agreed to convey the farm to Beedy and the two Chappells, subject, however, to all liens and incumbrances thereon, in consideration of their assuming such incumbrances, and paying his indebtedness to the bank, and the Wherry and Chappell note for $320, and thereafter executed

the first conveyance complained of accordingly. The consideration recited in the deed is $6,750. There is some evidence of an agreement to reconvey the farm to Mrs. Wherry, and of the execution of a quitclaim deed for that purpose. Beedy testified that he agreed with Mrs. Wherry to sell the farm back to her for the same amount that he gave for it, but that she was unable to raise the money, and nothing aside from the making of the deed was ever done in the matter. Mrs. Wherry testified that Beedy agreed to give her a deed when she paid for the land, and actually made out the deed, but it was not delivered because of her inability to pay for the land.

Beedy and the two Chappells then gave the bank their note for the sum of $2,500 and secured the same by a deed of trust on the land in controversy, took up the Wherry notes, and surrendered the $320 note. At the request of Beedy, a chattel mortgage was also given by S. S. Chappell on 181 head of cattle owned by him, to secure the bank's note. The evidence shows that Beedy was worth at this time over $100,-000, and being the only really solvent man on the note, his name made the bank perfectly secure without the Chappells, but in order to protect himself for having signed the note to the bank with the Chappells which took up the Wherry notes, he required the Chappells to sign the deed of trust to their interest in the farm, and S. S. Chappell to give the chattel mortgage upon the cattle. After the conveyance in question Wherry remained in possession of the farm until 1892, agreeing to pay therefor at the rate of $500 a year, and to keep up the repairs. The rent was collected by Beedy from Wherry, and applied in payment of interest on the incumbrances, and the note for $2,500 made in paying Wherry's indebtedness to the bank. In July, 1888, Beedy paid the McFadden note and mortgage, amounting at that time, principal and interest, to the sum of $2,387.75, having previously paid one year's in-

terest thereon, and took an assignment of the note to himself.

About the same time, S. S. Chappell drew a draft on Beedy for $1,106.85, in payment of the judgment in favor of the Johnson County Savings Bank, and took an assignment of such judgment to himself, his brother and Beedy. Prior to this, however, and on the next day after the first conveyance, Wherry gave Beedy a chattel mortgage on certain personal property, consisting of horses, mules, cattle, sheep and farm implements, to secure the payment of a note for $1,506 given for borrowed money, and a lumber account. When first applied to for this security, Wherry declined to give a mortgage, unless Beedy would lend him three or four hundred dollars more money. This, Beedy, after some hesitation and protest, finally concluded to do, in order to obtain the desired security, and the chattel mortgage was executed accordingly. By an agreement between Beedy and Wherry the latter was to sell the sheep and stock, and apply the proceeds in extinguishment of the mortgage indebtedness. In pursuance of this agreement, Wherry sold the sheep, and a part of the stock, and applied the proceeds arising therefrom, in part payment of this note, thereby reducing the same to $700. In December, following, Wherry gave another chattel mortgage on the personal property remaining unsold to secure a note for the latter amount. The property covered by the second mortgage was afterwards sold, and the proceeds applied in extinguishment of the indebtedness thereby secured.

The evidence further shows that Beedy received the stipulated rents from Wherry, and applied the same as above stated. The taxes on the farm in controversy, which run all the way from $38 to $66 a year, were paid regularly every year by Beedy.

The note for $2,500 executed by Beedy and the two Chap-

pells, and secured by their deed of trust on the farm in controversy, was received and held by the bank as a part of its assets, and at the wind up, when the bank went out of business, the other stockholders took cash for their share of the assets, and Beedy received his share in uncollected notes, secured by deeds of trust, in lieu of cash, including among others the note for $2,500, thus carrying out his arrangement with the Chappells to assume and pay such note, in consideration of the transfer of their interest in the farm in controversy to him.

The plaintiff claims title under a sheriff's sale under execution issued upon a judgment against Wherry.

The record shows that for nearly nine years before the commencement of this suit, the plaintiff says that he knew that the deeds in question were fraudulent, and never took any steps to assert his rights. In the meantime, however, the construction of a railroad near this farm greatly enhanced its value.

The validity of the transfer of the farm in question is assailed on the ground that Wherry's intention in conveying the same was fraudulent, and that Beedy took such conveyance with knowledge of Wherry's fraudulent intent.

The plaintiff contends that defendant Beedy occupies the position of an ordinary purchaser from an insolvent vendor, and therefore his knowledge of Wherry's purpose renders the sale voidable at the instance of his other creditors, even though he did not participate in that purpose. On the other hand, counsel for defendant maintain that the transaction was a preference, and not voidable at the instance of other creditors of Wherry, notwithstanding the fraudulent intent of Wherry and defendant's knowledge of such intent, provided he did not participate in such fraudulent purpose, and that with respect to the deeds in question, he stands in the position of a preferred creditor.

A careful reading of the testimony satisfied us that the transfer of the Wherry farm was simply a preference made in discharge and satisfaction of his indebtedness to Beedy, Beedy's bank, McFadden and the Johnson county bank, amounting in the aggregate to about $6,413.14, and to protect defendant Beedy and his associates for their assumption of part of such indebtedness. And we are further satisfied from the evidence, that Beedy took the deeds in question in good faith, in payment of antecedent indebtedness to himself and his bank, for which he at the time was working, and for the purpose of protecting himself with respect to the indebtedness so assumed, and the court below so found. This he had a perfect right to do, even though such transfer might operate to hinder or delay other creditors, and Wherry intended it should have that effect. Mere knowledge of such intent is not sufficient to avoid the transaction so far as Beedy is concerned. In order to produce such result, he must have actually participated in Wherry's fraudulent purpose.

We do not intend to follow counsel through the great multitude of cases which they have cited and discussed, as we have not followed them through the intricate detail of the testimony commented upon. The reasons stated in a few well-considered cases will answer our purpose.

It may be regarded as entirely settled in this State, that a debtor may prefer one creditor over another, by direct payment or transfer of property, providing the property is taken in satisfaction or assumption of a just demand, and not as a mere screen to secure the property to himself.

This doctrine is clearly expressed in Sexton v. Anderson, 95 Mo. 373, where the distinction is drawn between a mere purchaser and a preference. In pointing out the distinction this court said: "Generally, a sale of property with the intent on the part of the seller to thereby hinder, delay or defraud his creditors, and knowledge of such intent on the part of the

purchaser, renders the sale void, though the purchaser pay a valuable consideration for the property, because the purchase of the property under such circumstances amounts to a participation in the intended fraud. But a debtor, though unable to pay all of his creditors, may pay one or more to the exclusion of others, either in money or the transfer of property, and the favored creditor or creditors may accept such preference. If the preferred creditor, in such case, acts in good faith and takes the money or the property for the sole purpose of saving a bona fide debt, mere knowledge that the debtor intended to hinder, delay or defraud his creditors does not render the transaction void as against the creditor taking a preference; for simple knowledge under such circumstances, it is held, does not amount to a participation in the intended fraud."

This doctrine again finds utterance in Albert v. Besel, 88 Mo. 152, where the interpleaders had assumed certain indebtedness of the defendant. In course of the opinion in that case it is said: "The evidence in general tends to show that the interpleaders paid for the goods the fair value, and that they purchased the same for the sole purpose of protecting themselves, because of their suretyship for Besel on the debts assumed. They had a perfect right to buy the goods for that purpose, though the purchase might operate to hinder and delay the other creditors in the collection of their demands, and though to their knowledge Besel intended the sale should have that effect, provided they did not participate in the fraudulent purpose of Besel."

The case at bar does not fall within the doctrine applicable to a mere purchaser from an insolvent vendor, where, under the authorities, the purchaser's knowledge of the fraudulent intent on the part of the vendor makes the sale voidable at the instance of other creditors of the vendor, even though he did

not actually participate in that intent. The evidence clearly brings this case within the principle announced in Albert v. Besel and Sexton v. Anderson, above cited, and kindred cases in this State. An examination of this class of cases will show that a transfer of property as a preference by an insolvent debtor, to one or more of his creditors in payment of a bona fide indebtedness, is governed by entirely different rules than those which apply to an ordinary purchaser from an insolvent vendor.

In the former class of cases, the favored creditor is not only not required to consult the interest of the other creditors of the insolvent, fraudulent debtor, in accepting and taking property from him, but in looking after his own interest may utterly disregard them.

The effect of any preference sought means of necessity that some other less fortunate creditor is to be hindered and delayed in the collection of his debt, and upon what principle the knowledge of that fact by the preferred creditors, or the further knowledge on his part that the debtor intended that the transaction should have that effect, should operate to avoid the transaction. it is difficult to conceive. Where the right of preference, as in this State, is recognized, we can not see how it is possible for one creditor, who gets nothing more from the debtor than sufficient to pay off, discharge, or settle his just claim, to commit a fraud against the rights of other creditors, or how he can be said to have participated with the debtor in the commission of a fraud. The authorities cited by counsel for plaintiff, in support of their contention, are not deemed applicable or controlling, where the transfer, as in this case, was a preference as distinguished from a mere purchase, and for this reason we have not commented on them.

In this connection, it is also insisted by appellant that it devolved upon Beedy to show the good faith of the trans-

action between himself and Wherry, whereby the farm in question was transferred to the former. This contention, we think, is clearly untenable. It has been uniformly held by the appellate courts of this State, that the burden of proof always rests upon the party assailing a transaction for fraud. The plaintiff alleges in his petition and seeks to show that the sale was fraudulent and therefore void as to him. It was incumbent upon him, therefore, to show that the sale sought to be invalidated was fraudulent in point of fact. This precise question was before this division in the recent case of Bank v. Worthington, 145 Mo. 100, and there it was held that the burden of proving the fraud was upon the plaintiff who alleged its existence.

Nor is the rule in this respect in anywise to be altered, by reason of the fact that, in the transaction assailed, one of the parties to it is shown to have undertaken to commit a fraud against the right of the plaintiff. The fact that Wherry has fraudulently intended in this conveyance of his property to defendant, to hinder and defraud his other creditors, among whom was the plaintiff, does not operate to change the rule of evidence or to relieve the plaintiff from making good the allegations of fraud against the defendant in connection with that transaction, or shift the burden upon the shoulders of defendant to show his honesty so far as concerns himself.

It is true, cases may be found holding that in the case of a mere purchaser from a fraudulent grantor, where the fraudulent purpose of the grantor is shown, it then becomes incumbent upon the purchaser to show payment of the consideration, and the good faith of the transaction. Yet we apprehend that such a case does not arise in the state of facts here presented, and for that reason those cases are not applicable.

Again, Wherry's statements and admissions subsequent to the conveyance, in reference to the ownership of the farm, etc., were clearly incompetent, unless made in furtherance of

a conspiracy to defraud his creditors. In order, however, to make such declarations competent on the ground of a conspiracy between Wherry, Beedy and the Chappells to defraud the former's creditors, there must have been some evidence, aside from his declarations to establish such conspiracy. As there is no evidence tending to prove the existence of such a conspiracy at the time the declarations were made, the statements of Wherry were the merest hearsay, and not admissible for any purpose. The only evidence relied upon to show such conspiracy between Beedy and Wherry, consisted wholly of the declaration of Wherry. No rule is better settled than that a conspiracy can not be established in the first instance by the declarations of one of the supposed conspirators. It is unnecessary, therefore, to further discuss or advert to the testimony concerning the declaration of Wherry.

Since, again, the uncontradicted evidence shows that at the time the conveyance was made, the land in controversy was only worth $6,500, and that an indebtedness in excess of the value of the land was paid by Beedy, it is not perceived why the failure to state in the deed the exact amount thus paid and assumed, as contended by appellant, can affect the fairness or good faith of the transaction. The mere fact that the consideration expressed in the deed is $6,750, instead of the exact amount of the debts paid and assumed is, under the circumstances of this case, wholly immaterial, as the debts paid and assumed by Beedy exceeded the highest value placed upon the farm, by any of the witnesses testifying in the case. It would seem, therefore, that the recited consideration in no wise effected the validity of the transfer. The explanation of this transaction, so far as consideration is concerned, is perfectly consistent with honesty and fair dealing.

It is insisted with much earnestness by counsel for plaintiff, that the transfer in question was also fraudulent on the part of Beedy, as shown by the continued possession of the farm by Wherry after its conveyance to Beedy and the Chappells, and for that reason should be set aside. While the circumstances that Wherry continued in possession of the farm from 1886 to 1892, a period of about six years, unexplained, might tend to show that the defendants were not in good faith, the explanation and the reasons given therefor by both Wherry and Beedy seemed fair and satisfactory. They testified that Wherry paid an annual rental of $500 a year, besides keeping up the fences and repairs. Beedy testified that he applied the rents so received in payment of taxes, and interest on the McFadden judgment and mortgage, and the bank's note. Under the facts, as narrated by the witnesses, the circuit court was amply warranted in finding that Wherry's possession was that of a mere renter, and therefore not fraudulent.

It is also contended, that the assessment lists of 1889 and 1891 show that Wherry was the real owner of the farm. G. G. Valentine, the former assessor, testified that these lists were in the handwriting of Bowen, his deputy assessor, and Wherry testified that the assessment lists were handed to him by the deputy already filled out, and he just signed them without knowing that the farm was embraced therein, and we think the court below was justified in finding that Wherry signed the assessment lists under a misapprehension, as explained by him, especially as the uncontradicted evidence shows that Beedy paid the taxes for this and subsequent years.

It is next contended that there were fraud and collusion between Wherry and Beedy in withholding the deed from record. Bank v. Doran, 109 Mo. 40, and Bank v. Buck, 123 Mo. 141, are a type of the cases relied on by counsel in support of this contention. While the deed was executed on No-

vember 3, 1886, and was not recorded at Warrensburg until November 12, following, there is no evidence whatever of any agreement or understanding to withhold the deed from record. The delay in recording the deed seems to have been occasioned by a mere oversight or neglect on Beedy's part, and not the result of any fraudulent purpose or collusive understanding with Wherry. There were no circumstances in connection with the failure to file the deed for record from which fraud can be inferred.

The rule announced in Bank v. Doran, supra, and kindred cases to the same effect, cited by the plaintiff, is inapplicable here. The facts of the case at bar clearly distinguish it from those cases. In those cases, it was held that an agreement by a mortgagee to withhold his mortgage from record, is a fraud upon subsequent creditors. In the Buck case, there was an express agreement that the mortgage, which was in the form of an absolute deed, should not be filed for record, and that the existence thereof should be concealed, whereby the mortgagors were enabled to obtain credit from the plaintiff in that case for a large sum of money. But no such facts appear in this record. These cases came under review in Bank v. Rohrer, 138 Mo. 369, when it was held that the mere withholding of a deed from record, was not evidence of fraud. The court said: "It has always been held in this State, that the title of a bona fide purchaser or mortgagee under a deed or mortgage not recorded, is good against creditors at large, and is also good against sales under judgments and executions, if the deed or mortgage is duly recorded before such sales." There is no evidence in this record which shows knowledge on the part of Beedy that Wherry was obtaining credit on the faith of his ownership of the farm, or that the plaintiff in fact gave to him any credit whatever after the execution of his deed to Beedy and the Chappells. It is too clear for further dis-

cussion, that the delay in recording the deed under the circumstances disclosed by this record, in nowise misled the plaintiff, or effected the rights of any judgment creditors of Wherry.

The court below, with the testifying personality of the witnesses before it, had better opportunities for arriving at a correct conclusion upon the evidence than we have, and found nothing in the case to militate against the good faith of Beedy, or from which his participation in the fraudulent purpose of Wherry can be inferred. And we are disposed to adopt that finding, especially as such finding is entirely justified by the evidence.

Even though Beedy's fraudulent participation in the transfer was in some manner sustained by the evidence, the plaintiff was guilty of such laches in asserting his rights as to preclude a recovery. This suit was not begun until October 1895, nearly nine years after the execution of the deed in question, during which time the plaintiff lived in the vicinity and knew that Beedy was claiming to own the farm under such deed, which he claims to have known all the time was a fraud, and never took any steps to assert his rights, until the construction of a railroad near this land enhanced its value to $10,000. This conduct on the part of the plaintiff, in connection with other facts and circumstances shown by the record, effectually preclude him from any relief in a court of equity. Where as in this case, a party has slept upon his rights for the period of nine years, with knowledge of the fraudulent character of the deed sought to be invalidated, and allowed the opposite party to expend his money, or waits until the lands have greatly increased in value, either from such expenditure or otherwise, a court of equity might properly refuse to interfere, although the statute of limitations has not run. [Kelly v. Hurt, 74 Mo. 565; Bliss v. Prichard, 67 Mo. 187; Moreman v. Talbott, 55

Mo. 397; Landrum v. Bank, 63 Mo. 56; Hatcher v. Hatcher, 139 Mo. 614.]

For the foregoing considerations the judgment of the circuit court will be affirmed. *Brace, P. J.,* and *Valliant, J.,* concur; *Marshall, J.,* absent.