JOE BURSTON, APPELLANT, v. GEORGE H. FENNEWALD, RESPONDENT.*

Kansas City Court of Appeals.   January 23, 1928.

---

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 662, n. 82; p. 827, n. 8; p. 850, n. 51; p. 858, n. 3; p. 865, n. 41; p. 957, n. 65; Attachment, 6CJ, p. 62, n. 4, 5; p. 63, n. 11; Fraudulent Conveyances, 27CJ, p. 494, n. 42; p. 534, n. 44; p. 613, n. 82; p. 630, n. 34; p. 647, n. 22; p. 788, n. 8; p. 789, n. 18; p. 814, n. 33; p. 821, n. 30; p. 828, n. 10; p. 841, n. 21; p. 842, n. 36; p. 843, n. 43; Trial, 38Cyc, p. 1472, n. 51; p. 1501, n. 45; p. 1518, n. 69.

*W. H. Logan, W. W. Botts* and *Baker & Baker* for appellant.

*N. T. Cave* and *Rodgers & Huffington* for respondent.

ARNOLD, J.—This is an action by attachment to recover upon three promissory notes executed by defendant. The suit was instituted by plaintiff in the circuit court of Audrain county, Missouri, where the parties reside, but on change of venue it was tried to a jury in Callaway county. Judgment was rendered for defendant in the attachment proceeding. On the merits of the case the judgment was for plaintiff on the notes sued upon in the respective sums of $1683.83, $2761.13 and $1181.90, which said amounts include the face of the notes and accrued interest. Defendant did not appeal from the judgment on the merits. After motion for a new trial was overruled, plaintiff appealed from the judgment in attachment and the case is here for review on that point only.

The facts presented for consideration of the appeal on its merits are as follows: The parties are residents of Audrain county where, as stated, the suit was instituted. Defendant was engaged in farming and stock raising and from time to time dealt in options on the board of trade. On March 3, 1926, he owned a farm of 320 acres in said county against which there were deeds of trust aggregating $11,000. At that time the First National Bank of Mexico, Missouri, held his three promissory notes for $5000 and $1500, both signed by him as principal and by his father, B. Fennewald, as surety, and the other note for $3000 signed by him as principal and by his wife, Theresia, as surety. The Martinsburg Bank at Martinsburg, Missouri, also held his three notes for $3500, $2200 and $3000, respectively, with his father as surety. At the same time, his father, B. Fennewald, held two notes against him for $4500 and $4425, signed by defendant as principal and his wife as surety. All these notes are shown to have been given for money borrowed and that no payment had been made thereon.

The petition charges there were outstanding at this time against defendant the three unpaid notes involved in this action, to-wit: One note dated June 2, 1924, one year after date with six per cent compound interest, payable to plaintiff Joe Burston, with a credit of $90 interest; a second note for $2500 dated February 2, 1925, due in one year at six per cent, and indorsed by George Burston; and a third note for $1000 dated March 1, 1922, payable in one year at eight per cent, to Leslie Freyer, with interest paid to March 1, 1925, and indorsed by Freyer.

About March 1, 1925, the First National Bank of Mexico, Mo., called payment of the notes it held against defendant. About this time defendant became hopelessly involved and was advised by the president

of said bank to see his (defendant's) father. This was done and the result was that defendant conveyed to his father, B. Fennewald, the 320-acre farm owned by him, on condition that the father would pay defendant's indebtedness to the bank. This was agreeable to the bank if B. Fennewald would borrow from a loan company the sum of $24,000, secured by deed of trust on the land thus conveyed and upon B. Fennewald's place of 320 acres. Thereupon the deed from defendant to his father was executed March 3, 1926, subject to the $11,000 deed of trust heretofore mentioned. The father gave his note to the First National Bank for $9700, the three notes to the Martinsburg Bank were cancelled and the father gave his note to that bank for $8500. The two notes of defendant to his father were cancelled, the deed placed of record the same day, defendant was relieved from liability on all the notes mentioned and the father assumed sole liability thereon.

It appears a number of attachment suits were instituted against defendant, one of which was tried in Audrain county and the others were voluntarily dismissed.

In the present case, as stated, a change of venue was taken by plaintiff and the cause was tried to a jury in Callaway county. The verdict was for defendant in the attachment suit and judgment was entered accordingly. Plaintiff perfected his appeal to this court.

There was no defense interposed to the suit on the notes and the court entered judgment for plaintiff therefor. The attachment was directed against the 320 acres of land conveyed by defendant to his father and the following grounds therefor were alleged:

"1. That defendant has fraudulently conveyed and assigned his property and effects so as to hinder and delay his creditors.

"2. That defendant has fraudulently concealed, removed and disposed of his property and effects so as to hinder and delay his creditors.

"9. That defendant is about to fraudulently convey and assign his property and effects so as to hinder and delay his creditors.

"10. That defendant is about fraudulently to conceal, remove and dispose of his property and effects so as to hinder and delay his creditors.

"16. That the debt herein sued for was fraudulently contracted on the part of the defendant herein."

The plea in abatement is as follows:

"Now comes George H. Fennewald, defendant in the above-entitled cause and for his plea in the nature of a plea in abatement therein, denies each and every allegation contained in the affidavit for attachment and denies the truth of the facts alleged in the affidavit on which the attachment was sued out in this attachment."

The suit was filed May 13, 1926. It is first urged in support of this appeal that the weight of the evidence is so overwhelmingly against

the verdict as to raise the presumption that the jury were influenced by passion and prejudice and disregarded the instructions, and therefore this court should reverse the judgment. Cases are cited in support of the view that this court has power to reverse a judgment where there is a positive showing that the jury were influenced by passion and prejudice. The case was hotly contested and there was substantial evidence on both sides of the controversy.

The rule is established in this State that an appellate court will not set aside a verdict approved by the trial court on the ground of lack of evidence unless the record admits of no other conclusion than that the verdict was the result of bias and prejudice, or passion, or misconduct on the part of the jury. The record discloses that plaintiff tried his case solely upon the first ground of attachment alleged in the affidavit, to-wit:

"That defendant has fraudulently conveyed and assigned his property and effects so as to hinder and delay his creditors."

Plaintiff's first instruction told the jury that the sole question at issue was whether defendant fraudulently conveyed his land to his father, and thus other grounds alleged in the affidavit for attachment were eliminated and have no place in this review.

There was substantial evidence that defendant was in debt to his father and that the father assumed payment of large sums of money defendant owed certain banks; and that, in consideration of the cancellation of defendant's indebtedness to his father and the assumption of defendant's debts to the banks, the deed to the father was executed. The question as to whether this was a fraudulent transaction was for the jury. The record fails to show any positive evidence that defendant's indebtedness to his father was not bona fide. The consideration named in the warranty deed to the father was $37,700, and it appears that by this conveyance defendant was released from the following obligations:

Indebtedness to defendant's father ..............$8,925.00
Due Martinsburg Bank ........................ 8,500.00
Due First National Bank ..................... 9,700.00

Total ................................. $27,125.00

And, in addition, there was an existing deed of trust against the land in question of $11,000. There is no evidence of record tending to show defendant's equity in the land was worth more than $27,125. Defendant offered to prove it worth less than this, but on objection of plaintiff this proof was properly refused.

The record is barren of any testimony tending to reflect upon the integrity of defendant excepting that of Leslie Freyer, the payee named in one of the notes involved, who testified that defendant had stolen parts of harness and "ought to be in the penitentiary." De-

fendant and his witnesses testified to the contrary, leaving the question of the credibility of the witnesses for the jury to determine. It is not the province of this court to weigh the evidence where salient facts are disputed and the evidence on both sides is substantial. [Schreiber v. Andrews, 234 S. W. 862; Price v. Evans, 49 Mo. 396; State v. Harmon (Mo.), 296 S. W. 391.] We find the language used by Fox, J., in Wright v. City, 187 Mo. l. c. 691, 86 S. W. 452, particularly applicable to the case before us, where it is said:

"We have carefully considered the evidence developed at the trial, and find that this case is no exception to the ordinary contested cases of similar character, in which there is always more or less irreconcilable conflict of the testimony of witnesses."

If the testimony introduced by defendant was true and was believed by the jury, clearly it was sufficient to support the verdict rendered. The trial court refused to sustain the motion for a new trial. We hold the facts of record herein are not such as to warrant our interference with the verdict and so we rule against plaintiff on this point.

It is urged plaintiff made out a prima-facie case when he proved the conveyance of the farm, the insolvency of defendant, the continued possession of the farm by defendant and that the consideration for the transfer of title was pre-existing notes. It must be conceded that plaintiff may not be entitled to recover on the sole ground that he made out a prima-facie case, if in fact he did so. If such a rule obtained a defendant would be absolutely helpless and his defense, if any, would be of no effect. A prima-facie case may be overcome by evidence in behalf of the defendant. And the defendant herein introduced evidence tending to overcome the prima-facie case, if made. The court was justified in overruling the motion for a new trial, and defendant's testimony seems to have satisfied the jury.

In Bank v. McElvain, 280 Mo. 505, 219 S. W. 75, cited by plaintiff, the Supreme Court recognized the well-established rule that one may convey his property in payment of his bona-fide debts. It seems to be plaintiff's position that a debtor may not prefer one of his creditors over another, and the fact that he does so is presumptive evidence of fraud. But we cannot agree with this position. It was held in the case of Wall v. Beedy, 161 Mo. 625, 642, 61 S. W. 864, that where, as in the case at bar, the deed was accepted in good faith in payment of antecedent indebtedness to the devisee and his bank, for the purpose of protecting himself with respect to such indebtedness, he has a right to make such conveyance, even though such transfer might operate to hinder or delay other creditors. Here, it is clear defendant did intend it should have that effect. Mere knowledge of such intent on the part of the devisee will not work to avoid the transaction so far as B. Fenne-

wald is concerned. In order to void the transaction it is necessary that B. Fennewald engaged in such fraudulent purpose.

In Wall v. Beedy, supra, the court said, l. c. 637:

"A careful reading of the testimony satisfied us that the transfer of the Wherry farm was simply a preference made in discharge and satisfaction of his indebtedness to Beedy, Beedy's bank, McFadden and the Johnson County Bank, amounting in the aggregate to about $6413.14, and to protect defendant Beedy and his associates for their assumption of part of such indebtedness. And we are further satisfied from the evidence that Beedy took the deeds in question in good faith, in payment of antecedent indebtedness to himself and his bank, for which he at the time was working, and for the purpose of protecting himself with respect to the indebtedness so assumed, and the court below so found. This he had a perfect right to do, even though such transfer might operate to hinder or delay other creditors, and Wherry intended it should have that effect. Mere knowledge of such intent is not sufficient to avoid the transaction so far as Beedy is concerned. In order to produce such result, he must have actually participated in Wherry's fraudulent purpose. . . . It may be regarded as entirely settled in this State, that a debtor may prefer one creditor over another, by direct payment or transfer of property, providing the property is taken in satisfaction or assumption of a just demand, and not as a mere screen to secure the property to himself.

The evidence shows that on March 6, 1926, B. Fennewald borrowed from the Mexico Savings Bank, Mexico, Mo., the sum of $2500, three days after the equity in the farm was conveyed to him. Plaintiff insists that this is evidence of fraud in the conveyance, because this was done before the transaction was closed by taking up the notes at the Martinsburg Bank, which was done on March 20, 1926, and thus shown to be a part of the transaction. The evidence shows that B. Fennewald borrowed that money to pay checks which defendant had given to board of trade men on banks where he had no money to pay them when presented. There is no testimony of record tending to show that the $2500 borrowed, as above stated, had any connection with the conveyance of the equity in the farm. It is in evidence that the father borrowed this amount to avoid the threatened arrest of his son, the defendant. It was held in King v. Moon, 42 Mo. 558:

"Before a transaction is declared fraudulent, the proof should be very clear and satisfactory, and inconsistent with the idea that it was entered into with honesty and good faith. . . . 'But we have acted on the principle of giving the defendants the benefit of a construction favorable to the honesty of the transaction, when that construction would as well consist with the circumstances as a contrary one; and where doubts are entertained as to the true construction to be given to the conduct of the parties, those doubts should be resolved in favor of the defendants.' "

It is also urged as evidence of fraud that defendant remained in possession of the land after the transfer of the equity to his father. In the case of Stewart v. Thomas, Adm'r (cited by plaintiff), 35 Mo. 202, 208, the court said:

"Where the bona fides of a conveyance of land is in question, the circumstance that the grantor continued in possession after the sale is proper to be submitted to the jury for their consideration as to whether the transaction was fraudulent in fact; but it will not do to say that, as a matter of law, the grantor's possession in such case is presumptively fraudulent. This doctrine is confined in its application to sales of goods and chattels."

The question of the retention by defendant of a beneficial interest in the farm was submitted to the jury in plaintiff's instruction No. 6; their finding was adverse to plaintiff's contention. The evidence tends to show that the farm was leased to defendant's wife and that she and her husband remained thereon under such contract. We are not authorized to disturb the finding of the jury in this respect.

It is insisted the $5000 note to the First National Bank was signed by Barney Fennewald as principal and in the absence of any explanation must be regarded as his debt, and that, therefore, the conveyance was fraudulent. The testimony of defendant and his father was that the father signed as surety for defendant and that the debt, in fact, was that of defendant. The question was one of fact for the jury and we cannot say as a matter of law that the note did not represent the debt of defendant. The jury found that it did. [Berkshire v. Holcker (Mo. App.), 216 S. W. 556.]

It is urged under a separate point that in conveying his property to his father, defendant was preferring himself to his creditors because eventually he would share more largely than otherwise in his father's estate. We deem this point to be without merit and have so decided in what he have said. [Sammons v. O'Neill, 600 Mo. App. 530.]

Plaintiff further contends we should reverse this case regardless of the refusal of the trial court to grant a new trial. This is tantamount to saying that where there is an issue of fraud, this court is not bound by the finding of the jury on the question of fact, but may set aside the judgment arbitrarily. We do not agree with plaintiff that the case of McDonald v. Hoover, 142 Mo. 484, 44 S. W. 334, supports this contention.

It is urged that under the facts in evidence, B. Fennewald is not entitled to recognition as a preferred creditor, or as a creditor at all, because the notes he held against defendant were for money loaned defendant for dealing in options and the father knew the money was to be used for that purpose; that the debts secured at the bank were for the same purpose and the fact was known to the father. [Citing secs. 3565 to 3580, R. S. 1919; Stewart v. Hutchinson, 120 Mo. App.

32, 96 S. W. 253.] We think this charge is without substantial merit. The question is covered by plaintiff's instruction No. 5, wherein the jury are told that if they found certain facts as to dealing on the board of trade to exist, their verdict should uphold the attachment. The point now urged by plaintiff was fully covered by the instruction and the jury found against him. The judgment will not be reversed for this reason.

The same ruling covers plaintiff's charge to the apparent effect that every conveyance of an insolvent son to his creditor father is *per se* fraudulent. We have fully determined this point against plaintiff's contention in what we have already said and further discussion of it would be unprofitable.

In support of his appeal plaintiff urges that counsel for defendant grossly abused the privileges of discussion in their argument to the jury, especially in their denunciation of plaintiff's witness Freyer; in their criticism of plaintiff for instituting the attachment suit, and in contrasting plaintiff's action in so doing with other creditors who did not attach or had dismissed their attachment suits. And in going outside the record to tell of the virtues and high standing in Audrain county of defendant's family. This charge of error is chiefly based upon the argument of one Rodgers of counsel for defendant. We have examined the record and find counsel was evidently answering the argument of plaintiff's attorney who had preceded him and he said:

"He says the Fennewalds in Audrain county are pioneers. George Fennewald in these suits is the first one that ever had a suit in the court. The lone fact that a person has had a suit does not disparage him, and the lone fact that he has not had a suit does not bolster him up in the opinion of any sensible man."

We are unable to see in this argument, although *de hors* the record, a situation requiring a reversal. It is apparent that counsel for plaintiff invited the reply by his remarks previously indulged. Plaintiff is in no position to complain. We hold the circumstance to be rather trivial than otherwise, and not prejudicial. This holding is in conformity with the well-known rule of law as announced by the St. Louis Court of Appeals in Plannett v. McFall, 284 S. W. 850, 854, where it is said:

"Suffice it to say, it is largely for the trial court, to determine whether counsel, in the conduct of a case and in argument to the jury, transcend the limits of professional duty and propriety, and, unless there has been a clear abuse of such discretionary power, it is not within the province of an appellate court to interfere." [See, also, Straus v. Railroad, 86 Mo. 421, 430.] The cases are all one way on this point and we need not discuss it further.

This ruling applies also to the charge attempted to be made by plaintiff that defendant's counsel unduly and viciously cross-exam-

ined plaintiff's witness Freyer. The rulings of the trial court on objections offered by plaintiff's counsel were prompt and proper so far as the record discloses. It is true the cross-questioning of Freyer was vigorous and acrimonious, but we fail to see therein any grounds for reversal. Under the provisions of section 1513, Revised Statutes 1919, we may not disturb the verdict.

In this connection plaintiff insists his instruction No. 8 should have been given and that the ruling of the trial court in its refusal constitutes reversible error. Plaintiff suggests no reason why the instruction should have been given, nor why its refusal was prejudicial error. An examination of the instruction shows that it was properly refused, hence this point is ruled against plaintiff.

It is urged there was error in the giving of defendant's instructions B and C which submitted to the jury the question of the validity of the debts which defendant testified were paid by the conveyance to the father of the son's equity in the farm. The question of the validity of the debts in one touching the very vitals of the action, and the jury properly were required to make a finding thereon. Finally, a charge of error is directed against defendant's instruction F, which is as follows:

"The jury is instructed that there is no evidence showing or tending to show that Frank Fennewald, co-maker on the notes sued on, was insolvent at the time of the execution of said notes, and you are therefore instructed that if you find that defendant at said time had not formed an intention never to pay said notes, then even though you find that defendant was insolvent at said time, yet you cannot find that the indebtedness sued on was fraudulently contracted by reason of the insolvency, if any, of the defendant, George Fennewald."

We do not feel warranted in discussing this point at length. The question of fraudulently contracted debt was eliminated from our consideration by plaintiff's instruction No. 1 which told the jury that "the sole issue here presented is the question whether defendant George H. Fennewald fraudulently conveyed the 320 acres of land mentioned in the evidence to his father, B. Fennewald, so as to hinder or delay his creditors, or any of them, in the manner detailed in other instructions given herein in the collection of their debts."

Instruction F, complained of, correctly declares the law as applied to the facts, and was not error. [Blackwell v. Fry, 49 Mo. App. 638.]

We find no reversible error of record, and the judgment is accordingly affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.