FIRST NATIONAL BANK TRENTON, Respondent, v. THE BADGER LUMBER COMPANY, Appellant.

Kansas City Court of Appeals, January 14, 1895.

Principal and Agent: UNAUTHORIZED NOTE: RATIFICATION. H. was defendant's agent to sell lumber, extend credit and collect money; he became short in his accounts and executed defendant's note without authority to the plaintiff and obtained therefor a draft which he forwarded to the defendant with directions to credit his account. Defendant without knowledge of the unauthorized note collected the draft and gave the credit as directed. Defendant refused to pay the note or return the proceeds of the draft. *Held,* that defendant was liable on the note, *affirming same case,* 54 Mo. App. 327. ELLISON, J.,

*dissenting, holds,* where the unauthorized agent owes the principal and the principal, without a knowledge of the unauthorized act, applies the money so secured to the agent's account, the principal does not ratify the means whereby it was obtained by refusing to refund the money, since the money is not received as on a contract with a third party, but on an independent legal cause, to wit, viz: The pecuniary obligation which the agent owes to him. Cases *pro* and *con* discussed in the majority and dissenting opinions.

*Appeal from the Grundy Circuit Court.*—HON. P. C. STEPP, Judge.

AFFIRMED.

*Harber & Knight* and *Shannon C. Douglass* for appellant.

(1)   The law is well settled that a ratification of an act, previously unauthorized, must, in order to be binding upon the person, sought to be affected by it, be made with *a full knowledge of all the material facts,* in connection with the transaction, and the receipt, even from an agent, of money paid him on a contract, does not bind the principal to the contract, unless he knows *on what account the money was received, and the terms of the contract.''* The burden of proving a ratification devolves upon the party asserting it. *Penn. Co. v. Dundridge,* 8 Gill & J. 323; *Baldwin v. Burrows,* 47 N. Y. 312; *Winsor v. Bank,* 18 Mo. App. 665–675; *Gulick v. Grover,* 33 N. J. Law, 463; *Fuller v. Ellis,* 39 Vt. 345; *Rees v. Medlock,* 27 Tex. 120; *Bell v. Cunningham,* 3 Pet. 69; *Owings v. Hull,* 9 Pet. 607; *Nickson v. Palmer,* 8 N. Y. 398; *Smith v. Tracy,* 36 N. Y. 79; *Manning v. Gasharu,* 27 Ind. 399–413; *Bohart v. O'Bern,* 36 Kan. 284; *Lathon v. Bank,* 18 Pa. 824; *Reynolds v. Ferney,* 87 Ills. 570; *Clark v. Lyon Co.,* 7 Nev. 755; *Fletcher v. Dysart,* 9 B. Mon. 413; 1 Am. Lead. Cases, 573; Story on Agency, sec. 239; *Eggleson v. Mason et al.,* 51

N. W. Rep. (Iowa) 1; the rule in Missouri is to the same effect.  *Hyde v. Larkin*, 35 Mo. App. 365; *Carson v. Cummings*, 69 Mo. 328; *Cravens v. Gilliland*, 63 Mo. 28; *Ruggles v. Washington Co.*, 3 Mo. 497; *Watson v. Bigelow*, 4 7Mo. 413; *Davis v. Krum*, 12 Mo. App. 279, announce a different doctrine, when considered with reference to the facts in each appearing and influencing the decision of the court.  (2) The mere reception of the fruits or benefits of an unauthorized act of an agent, or, even the retention thereof, after acquiring knowledge of his fraud, does not necessarily amount to a ratification of his act, and make the principal liable therefor, as if for his own act.  *Smith v. Tracy*, 36 N. Y. 79, and cases cited therein; *Gulick v. Grover, supra; Baldwin v. Burrows, supra; Bohart v. O'Bern, supra; Ruggles v. Washington Co., supra; Carson v. Cummings, supra.*  (3) It is proved, conclusively, that the draft was received and the money had by the defendant, without any knowledge of the transaction between Hershe and plaintiff, and not as the fruits of a contract made for it, or on its behalf, but upon an independent liability of Hershe to the defendant, and, the acceptance and keeping of the proceeds thereof, under such circumstances, did not amount to a ratification of Hershe's unauthorized act, or render defendant liable in this action.  To have the effect of a ratification, the proceeds must have been received, not only with the knowledge, but under such circumstance as to *constitute a voluntary adoption by defendant of the contract between Hershe and the plaintiff*, when the draft was obtained.  *Bohart et al. v. O'Berne et al., supra; Baldwin v. Burrows, supra; Penn. Co. v. Dundridge*, 8 Gill & J. 323; *Evans v. Weels*, 22 Wend. 324, and cases last herein mentioned.  *Clark v. Lyons, supra; Carson v. Cummings, supra; Peck v. Ritchey*, 66 Mo. 114.

*Geo. Hall* for respondent.

(1) Under the proof in this case it is undisputed that Hershe was the agent and manager of appellant's business, and as such agent, and in the name of appellant, he borrowed the money of respondent. Although Hershe may not have been authorized to borrow the money, appellant received the same, and after learning the unauthorized manner in which it had been procured it was appellant's duty to refund the same. By keeping the money it ratified the acts of the agent. *Watson v. Bigelow*, 47 Mo. 413; *Davis v. Krum*, 12 Mo. App. 279-287; *Bank v. Lumber Co.*, 54 Mo. App. 327; *Leavitt v. Siger*, 52 N. W. Rep. 832, *Loc. Cit.* 833; *Rogers v. Hardware Co.*, 39 N. W. Rep. 844; *Ripley v. Case*, 49 N. W. Rep. (Mich.) 46; *Busch v. Wilcox*, 47 N. W. Rep. (Mich.) 328. (2) One who receives the avails of notes taken by his agent and indorsed by him as agent for discount can not deny the agents' authority to make the indorsement. *Bank v. Colliery Co.*, 14 N. Y. Sup. 21; 59 Hun, 627; *Cotton Mills v. Indian Orchard Mills*, 147 Mass. 268, 17 N. E. Rep. 496-9, Am. S. Rep. 698; *Mining Co. v. Mining Co.*, 11 Col. 223, 7 Am. S. Rep. 226; *Nichols, Shepard & Co. v. Kern*, 32 Mo. App. 1; *State ex rel. v. Harrington*, 100 Mo. 170; *Bank v. Bank*, 101 U. S. 181.

SMITH, P. J.—In vain has been our search through the record of the case now before us to ascertain wherein, if at all, it is to be distinguished in its essential features from that reported in 54 Mo. App. 327.

When the case was here on the former appeal the judgment was reversed and the cause remanded to be proceeded with in accordance with the view of the law expressed in the majority opinion. Since then the case has been retried, and the court in its instructions

to the jury adopted for its guide the law as declared in that opinion. By its instruction for plaintiff it plainly told the jury that, if Hershe was the agent and manager of defendant's lumber yards at Trenton, and that while so being he executed to plaintiff the note read in evidence, and that the cashier of plaintiff in good faith, believing Hershe had authority to execute said note and borrow money for defendant, drew and delivered to Hershe a draft for $500 for said note, which draft Hershe sent to defendant and that defendant received the same and collected the money thereon and refused to return the same to plaintiff after it learned the manner in which Hershe procured said draft from the plaintiff, even though Hershe had no authority to execute said note or to borrow money; and, even though the defendant did not know the manner in which Hershe procured said draft at the time, it received the same and collected the money thereon. The proposition of law embodied in the defendant's instructions is the exact converse of that announced by those given for plaintiff. These two theories are in direct opposition the one to the other.

The contention of the counsel for defendant is, therefore, that there could be no ratification of the unauthorized act of Hershe as agent of the defendant in consequence of the acceptance by defendant of the fruits of Hershe's unauthorized acts. The defendant objects that the ratification of the unauthorized act of Hershe in making the note and procuring the draft therefor, to be effective, must have come to the knowledge of the defendant before or at the time of the receipt of the money on the draft. This objection, we think, was fully met and answered by what was said in the majority opinion when the case was here before. There is nothing suggested in the very elaborate brief of the industrious counsel for the defendant that in

the least tends to unsettle the conviction then expressed. The authorities then cited and relied on by us we feel more than ever assured fully justified the conclusion there stated. Our convictions have been strengthened by an examination of the following further authorities to which we have been cited. *Rogers v. Empire Hardware Co.*, 24 Neb. 653; *Leavitt v. Seger*, 52 N. W. Rep. 832; *Busch v. Wilcox*, 82 Mich. 315; *Ripley v. Case*, 86 Mich. 261.

In the dissenting opinion by Mr. Justice ELLISON, it was said: "The money which is here sued for was not paid or turned in to defendant *as defendant's money* or as money which had *arisen on any of the defendant's transactions.* It was paid by the agent and *received by defendant as the agent's money in discharge of his debt.*" If the evidence contained in the record in the former appeal tended to show the state of facts set out in the paragraph just quoted, that in the present record shows just the contrary. This will be seen by reference to the testimony of Mr. Toll, president of the defendant, in response to the following questions propounded to him by plaintiff:

"*Q.* I will ask you how you kept your account with your Trenton office? *A.* We kept our account with our Trenton office in our daily balance after we transcribed it in a book at Kansas City.

"*Q.* Who did you charge it to, your Trenton office? *A.* Yes, sir; to the Trenton office.

"*Q.* The Trenton Yard, I mean; and you had your debit and credit all through to the Trenton yard? *A.* Yes, sir.

"*Q.* From beginning to end? *A.* Yes, sir."

In addition to this, the whole testimony of the defendant's officers show that they thought the draft represented the proceeds of the sale of defendant's own lumber. The transaction of Hershe with the

plaintiff showed that the note was executed as that of defendant, and the draft was given for the same payable to defendant. The remittance was by Hershe as the agent of defendant as money received for sale of lumber and on collections due defendant. In the face of these facts how can it now be said that the draft was received by defendant as the agent's money in discharge of his debt? If, as suggested by counsel for plaintiff, the monies made way with by Hershe were his own, how could the defendant have succeeded, as it appears to have done, in convicting him of the crime of embezzling the same? It is clear that the facts upon which the opinion just referred to was principally based are not to be found in the record of the present case.

The case, as already remarked, has been tried in conformity to the directions approved by us when the case was here before, and since no new fact has been introduced into the present case, as appears from the record, we are, if for no other reason, bound under the principle of *stare decisis* to adhere to our ruling in the former appeal. *Hombs v. Corbin*, 34 Mo. App. 393.

It follows the judgment must be affirmed. Judge GILL concurs. Judge ELLISON dissents.

ELLISON, J. *(dissenting)*.—I adhere to the opinion expressed when the case was here before. All pretense that the agent was authorized to borrow for defendant the sum sued for, or to execute a note in defendant's name is abandoned. The suit was originally on the note which the agent executed in defendant's name, but an amended petition was filed in which that, was abandoned. The sole question is ratification. And as to this it seems now to be conceded that, since defendant had no *knowledge at time it received the draft* that the agent had gotten it of plaintiff in defendant's name,

the ratification must be based upon defendant's having refused to pay back to plaintiff that amount of money when it did learn how it had been obtained. In other words that, by retaining the fruits, after knowledge, it must be held to have adopted the means of obtaining them. The facts of this case—the facts which are conceded by both parties—make this principle of the law of ratification altogether inapplicable. Hershe was defendant's agent in the sale of lumber for cash and on credit. He had authority to receive payment for cash sales and to collect from customers who purchased on time. It was his duty to make daily report to defendant of the state of the business; or at least he was to report at not longer periods than three days. In addition to this it was his duty to send in to defendant the balance of moneys he might have on hands due defendant whenever it would amount to a considerable sum—anywhere from $200 to $500. As stated by Judge SMITH on the former appeal, he "fell behind with the defendant in respect to the faithfully accounting for all moneys received by him in his capacity as agent for the defendant. To cover up his defalcations he made in the name of the defendant" the note etc. For this note he received of plaintiff the draft on the National Bank of Commerce which he inclosed to defendant in the following letter:

"OFFICE OF BADGER LUMBER COMPANY,
        TRENTON, Mo., July 21, 1891.
"*Badger Lumber Company, A. A. White Treas. Kansas City, Mo.*

"DEAR SIR: Please find enclosed draft No. 11,106 on Nat. Bank. of Com., K. C., Mo., Amount. . . .   $500 00

"       "                "       _____

"       "                "       _____

"Total. . . . . .   $500 00

"Please place same to our credit and acknowledge receipt.                    Yours very truly,

"BENJ. F. HERSHE, Agent."

The amount was credited by defendant on the account as directed. I am not able to see how the extract from the testimony of one of defendant's officers, ·as set out in the opinion, should in any way change the material facts, or the result that should follow therefrom. It can certainly make no difference how defendant kept its accounts and books with the Trenton yard—whether the charges were against the Trenton yard or against the agent who controlled, managed and handled the funds arising from that yard. The defendant was not dealing with an inanimate affair, but was, of course, dealing with its agent who sold lumber for it and collected the purchase money, out of which he bought native lumber, paid expenses, deposited the money and was to remit balances to defendant. And when he remitted to defendant he was, of course, discharging what he owed it. Whenever there was a balance against him or the Trenton office (no difference which) representing an amount which he had misapplied, he owed that amount—that amount was due from him to defendant. And when he sent the draft to defendant he did so in payment of a part of what was due from him, as the result of misapplication of moneys in his hands. Suppose that, instead of giving Hershe the draft, plaintiff had given him that amount of money and he had paid it over to defendant, would it be in accordance with any principle of law to say that defendant, upon learning that he had obtained it by the fraudulent use of their name, should be held to pay that sum to plaintiff? If this was the law, then every one who is defrauded by an agent forging his principal's name for the purpose of obtaining money to meet his speculations from his principal, can recover

the money from the principal.   If a collecting agent sent out over the country by a wholesale merchant should loose the sum  collected in  gambling and then make it up by the fraudulent use of the merchant's name and send it in to the merchant, would the merchant, who had no knowledge, when he received it, how it was obtained be liable to an action by the party defrauded?   If this had been understood to be the law the present action would not be the novelty it is in legal annals.

It seems to me that the doctrine of ratification by retaining the fruits of an unauthorized contract finds no facts in this case upon which to rest.   The opinion of my colleagues treats the case as though an agent had without authority bought a horse of a third party and executed a note for the purchase money in his principal's name.   In such case, when the principal learns how the horse was obtained, he could not refuse to pay the note and yet retain the horse.   If he refused to surrender the horse he would be compelled to pay the note.   Otherwise he would  have the horse without having rendered value.   This is in no way similar to the facts of the case before us for the defendant here in receiving the money was  only receiving what was due to it.   It was not receiving something without rendering value, for it had already parted with what the money received  represented and  gave the agent's account  credit.   And  the  sum  which defendant received was not the fruits (in a legal sense) of the fraudulent act of Hershe, but the *fruits  of its business* at Trenton, represented by its agent.

The error which it seems to me is made in the decision of this case is also made apparent by the authorities cited in support of the opinions rendered now and when the case was first here.   *Ruggles v. Washington County*, 3 Mo. 496, was where agents of

Washington county built a courthouse for the county. The court said of the case: "As soon as the courthouse was finished the county court took possession of it and have used it ever since as a courthouse. They, for the benefit of the county, have had the use of the house for at least fifteen years. They then discover some supposed flaw in the original contract, by which they attempt to avoid payment to the builder; this looks like an afterthought and is not entitled to the favor of law." So the case of *Norton v. Bull*, 43 Mo. 113. That case was also where a principal was seeking to retain benefits to which he was not entitled, and which the acts of the agent for him brought into existence. In *Watson v. Bigelow*, 47 Mo. 413, an agent without authority borrowed money of Mrs. Watson, giving her a note therefor. With the money he purchased a horse and buggy, which he used in the business of his principal. The principal denied the agent's authority, refused to pay the note and refused to give up the property, but on the contrary sold it and kept the proceeds. The court held that by keeping the property after knowledge of the unauthorized act of the agent, the principal ratified the act and the note became the debt of the principal. So each case cited is wholly inapplicable to the case under consideration. All those cases may be illustrated by the principle that, where A makes a fraudulent sale of an article of property to B, for the purchase price of which B executes his note, B can not keep the property and also refuse to pay the note. If he wishes to disavow the contract he must surrender up the property. Otherwise B would have the property and not be out anything. So, as was before stated, if one assuming to act for a principal buys a horse for him and promises in the principal's name to pay the purchase price; if the principal, upon learning of the unauthorized act, refuses

to give up the horse, he ratifies the act of the unauthorized agent and must pay the price. For here there is no circumstance to justify the keeping of the horse except to pay the price.

But, whenever the unauthorized agent owes the principal the money which he pays to him and the principal, without knowledge of how it was obtained, applies it to the agent's account, the principal does not ratify the means whereby it may have been obtained by refusing to pay over the money to the party from whom it was obtained. In such case there is no privity between the principal and the party with whom the agent dealt. There is no ratification, for the reason that the principal *refuses to recognize the unauthorized act and his retaining the money is not as being received on a contract with the third party, but upon an independent legal cause, viz: the pecuniary obligation which the agent owed to him.*

The distinction which I have been endeavoring to make has been made in several adjudications: *Thatcher v. Pray*, 113 Mass. 291; *Baldwin v. Burrows*, 47 N. Y. 212; *Bohart v. Oberne*, 36 Kan. 284; *The Penn. Co. v. Dundridge*, 8 Gill & J. 323; *Gulick v. Grover*, 33 N. J. L. 463; *Lime Rock Bk. v. Plimpton*, 17 Pick. 159.

The first of these cases is much in point here. There an agent of the plaintiff sold to the defendant Pray, a horse without having any authority to do so. The agent received a draft from defendant in payment and sent it to plaintiff, who received the same without knowing of the agent's unauthorized act in selling the horse, and applied it as a credit on what the agent was owing him on other matters. Afterwards, on learning of the sale he disavowed it and demanded the horse of defendant. The defendant demanded the money he had paid to the agent, and which the plaintiff had

received, before he would deliver the horse. The plaintiff refused to pay back the money, and it was held that he could recover the value of the horse. In *Bohart v. Obern, supra,* the supreme court of Kansas say of a state of facts precisely applicable to the case in hand: "Where an agent makes a contract, outside of his actual and apparent power, and the fruits of his contract are received by his principals in ignorance of the material facts and without any knowledge that the contract had been made in their behalf or names, but were received and were retained by them upon the information and understanding that the money was paid to satisfy in part a liability existing against the agent, and in their favor, such receipt and retention will not amount to a ratification of the unauthorized contract." The case of *Lime Rock Bk. v. Plimpton,* 17 Pick. 159, is not like the present case, but it serves to illustrate the principle of law I have invoked. In that case an agent had in his possession some of his principal's money, which he, without authority, loaned to the defendants, they not knowing it was his principal's. The agent also owed the defendants and they applied the amount they thus borrowed of him on what he was owing them. He afterwards informed them the money was not his, but that he had collected it for his principal and demanded it of defendants. It was held in an action for money had and received that the principal could not recover from the defendants.