## STOTTS CITY BANK, Appellant, v. MILLER LUMBER COMPANY, Respondent.

St. Louis Court of Appeals, April 28, 1903.

1. **Practice: FINDINGS OF FACT.** Where the trial court, at the request of a party, makes and files its written findings of fact on the same day with the rendition of the judgment, it is a sufficient compliance with the statute, though such findings were requested after the judgment was announced.

2. ———: ———. A finding of the facts by the trial court is sufficient under the statute, though it does not cover all the issues, since on each material issue on which it appears to be silent, it may be regarded as a finding against the party holding the affirmative or burden of proof.

3. **Agency: RATIFICATION.,**Where the agent of defendant was accustomed to draw checks on defendant's bank in defendant's name, and deposit the proceeds to his individual credit in the plaintiff bank, and to draw upon the latter account in payment of defendant's obligations, without appropriating any of the money to his own use, and the defendant on discovering the practice, discharged him, but retained the benefits of all his transactions, and where plaintiff has cashed checks drawn on the former bank as above which are dishonored, the defendant is liable to plaintiff on such dishonored checks.

ON MOTION FOR REHEARING.

4. ———: ———. Where defendant's agent keeps defendant's account in plaintiff bank, in his own name, without defendant's knowledge, but uses the money for defendant's benefit, defendant is liable to plaintiff for dishonored checks, which plaintiff cashed, drawn on another bank by the agent in defendant's name when the proceeds were used and retained by defendant, although said agent has on other accounts embezzled large sums of money belonging to defendant.

Appeal from Lawrence Circuit Court.—*Hon. H. C. Pepper*, Judge.

REVERSED AND REMANDED.

*D. B. Jones* and *Cloud & Davis* for appellant.

(1) It was the imperative duty of the court, under section 695, Revised Statutes 1899, to make a finding of all of the issuable facts presented by the pleadings and evidence; also of the law applicable to the issuable facts. Unless the court has so found, the case should be reversed and remanded for new trial. Ins. Co. v. Tribble, 86 Mo. App. 546; Cochran v. Thomas, 131 Mo. 278; Nichols v. Carter, 49 Mo. App. 401; Bailey v. Emerson, 87 Mo. App. 225. (2) When the finding of facts is not supported by the evidence, it may be assailed in the appellate court, if the evidence is preserved by a bill of exceptions. Freman v. Hemenway, 75 Mo. App. 621; Nichols v. Carter, 49 Mo. App. 401. (3) The court should have passed on the question, which was presented for consideration by the evidence, whether or

not the moneys deposited in the Stotts City Bank were the moneys of defendant bank, or of O'Kelley, and whether defendant received the proceeds of the two checks in issue. (4) The evidence unquestionably shows that every dollar placed by O'Kelley in plaintiff bank was checked out and placed to the credit of defendant in the Farmers' Bank of Mt. Vernon. It was the duty of the defendant to either honor and pay the checks sued on, or refund the money which plaintiff paid out on O'Kelley's checks, and which went to the credit of defendant in the Farmers' Bank. National Bank v. Lumber Co., 54 Mo. App. 327; National Bank v. Lumber Co., 60 Mo. App. 255. (5) Defendant, through its president Mr. Miller, in settling and balancing its account with the Farmers' Bank, and agreeing to balance O'Kelley's account with plaintiff bank, ratified the acts of its agent, O'Kelley, and will not be heard to complain of want of authority.

*H. Brumback* and *Edw. J. White* for respondent.

(1) Appellant's request that the court should state its conclusions of fact separately in writing, was made after the judgment of the court in favor of defendant was announced, and too late. The purported finding of fact is no part of the record, for that reason, and will not be considered by this court. "A proper construction of the section (695, now R. S. 1899) requires . . . and it necessarily follows that the request for such findings must precede the judgment." Hamilton v. Armstrong, 120 Mo. 614; Young v. Stephens, 66 Mo. App. 226; Butts v. Ruby, 85 Mo. App. 405; Loewen v. Forsee, 137 Mo. 39. (2) "The rendition and the entry of a judgment are entirely different things. The first is a purely judicial act of the court alone and must be first in order of time, while the entry is merely evidence that a judgment has been rendered and is merely a ministerial act." 18 Enc. Pl. and Prac., 430; Fontaine v.

Hudson, 93 Mo. 62; Gray v. Palmer, 28 Cal. 416. (3) "Conclusions of fact" found by the court, do not cover all the issues. This being a case at law, tried to the court, and no declaration of law having been asked, and there being evidence to support the special finding, there is nothing for this court to review. Sutter v. Raeder, 149 Mo. l. c. 307; Railway v. News Co., 151 Mo. 389; Lumber Co. v. Mining Co., 78 Mo. App. 681. (4) No authority, direct or implied, was shown by the evidence, in O'Kelley, as agent of defendant in the lumber business to check out funds once deposited in the Farmers' Bank to credit of the defendant, other than to remit the same to defendant; and the drawing by him of the checks in suit and the depositing of the same with plaintiff in his own name, was a conversion and embezzlement of such fund. Thereafter any return of any part of the fund, was but paying a debt he owed defendant. The nature of O'Kelley's transactions prove beyond doubt that they were but a method to conceal his shortage to his principal. State ex rel. v. Elliott, 157 Mo. 619; Bank v. Lowell, 109 Mass. 214; Bank v. South Hadley, 128 Mass. 503; Craft v. Railroad, 22 N. E. 920; Sims v. U. S. Trust Co., 9 N. E. 606; Nat. Bank v. Ins. Co., 103 U. S. 783; Edwards v. Dooley, 24 N. E. 829; Bickford v. Menier, 14 N. E. 438; Evangelical Synod v. Schoeneich, 143 Mo. 656. (5) Plaintiff's cashier knew the line of business in which defendant was engaged, and the scope of O'Kelley's power as its agent, and the burden fell on plaintiff to show that O'Kelley as such agent had authority to draw the checks. Johnston v. Hurley, 115 Mo. 519; Bank v. Hogan, 47 Mo. 474; Hotel Co. v. Furniture Co., 73 Mo. App. 138; Brosnahan v. Best Brewing Co., 26 Mo. App. 386; Mechanics Bank v. Schaumberg, 38 Mo. 228; Gerard v. McCormick, 29 N. E. 115; National Bank v. Ins. Co., 104 U. S. 54; Merchants Bank v. Bergen, 115 U. S. 391; United States v. City Bank of Columbus, 21 Howard 353; Floyd Acceptances, 7 Wallace 676. (6)

There could be no ratification of O'Kelley's act in drawing the checks, by defendant or by Miller as its general manager, because at the time he had the conversations in evidence with plaintiff's cashier, it is unquestionable that he had no knowledge of the existence of either of the checks in suit. Pitts v. Steele Mercantile Co., 75 Mo. App. 221; Cravens v. Gillilan, 63 Mo. 33; State ex rel. v. Findley, 101 Mo. 377; Jones v. Williams, 139 Mo. 77. Ratification can be effectual only when the acts were done on account of the principal. Story on Agency, sec. 251a; Planing Mill v. Brundage, 25 Mo. App. 273; Herd v. Bank, 66 Mo. App. 646.

REYBURN, J.—Plaintiff, a Missouri banking corporation, brought this action against defendant, a Missouri business corporation, on two checks, both dated Mt. Vernon, Missouri, January, 1901, one for $400, bearing date the eleventh and one for $325, bearing date the fourteenth of that month, both payable to plaintiff or order upon the Farmers' Bank of Mount Vernon, purporting to be executed by defendant, by C. W. O'Kelley, and upon which instruments plaintiff averred it paid defendant the respective sums of money specified on the face of each, but on presentation and demand for payment to the Farmers' Bank they were dishonored.

The answer was a general denial verified by oath of the president of defendant and, after trial before the court, a finding for defendant was orally announced, whereupon before entry of such finding and judgment, the plaintiff made parol request for a written finding of the facts, and the trial judge entered upon his docket, "verdict and judgment for defendant," and subsequently on the same day filed a finding in writing as follows:

"The court finds that the defendant company was a corporation, buying and selling lumber at Aurora, Mt. Vernon and Miller, Missouri, and that C. W. O'Kelley was the agent at the yard at Mt. Vernon, and had been

since the establishment of the yard there in 1891; that said O'Kelley had been issuing checks on the Mount Vernon bank, payable to the Stotts City Bank for a considerable length of time, and had been depositing the proceeds of said check to his individual credit in the Stotts City Bank; that said O'Kelley issued the checks in question; that the money so deposited in the Stotts City Bank had been checked out to the T. A. Miller Lumber Company and that said O'Kelley had no account with the Farmers' Bank; that defendant had no notice or knowledge of O'Kelley's transactions with the Stotts City Bank, and had no authority either expressed or implied to bind defendant. That under the law, and facts, plaintiff can not recover."

Which finding plaintiff assailed by exceptions unsuccessfully and its motion for new trial was also overruled.

The testimony disclosed that defendant was engaged in business in Lawrence county, with its places of business at various points therein, including a yard at Mount Vernon, where the Farmers' Bank, upon which the checks in suit were drawn, was located and at which bank defendant had an account. O'Kelley had been agent of defendant for ten years preceding January, 1901, and had transacted all business at the Farmers' Bank, signing the defendant's name to all checks thereon, with the knowledge of T. A. Miller, its manager and president, who frequently completed such check, which had been signed in blank in defendant's name by O'Kelley, and who received checks drawn thereon signed by O'Kelley in defendant's name for remittances of the business of defendant and deposited them in the bank at Aurora.

In October, 1900, O'Kelley opened an account in his individual name with plaintiff at Stotts City, and the checks here involved were deposited by O'Kelley with plaintiff and their amount placed to his credit and they were forwarded by it to St. Louis in due course of

collection in the same manner as numerous other checks drawn in the same form had been deposited, credited and collected on other occasions, and the funds of this individual account were drawn by O'Kelley and transferred to the account in defendant's name kept by him at Mount Vernon. The banking business conducted by defendant with the Farmers' Bank, during the year 1900 was $61,968.13, and the volume of such business transacted by O'Kelley between the plaintiff's bank and the bank at Mount Vernon, by the transmission of funds from one account to the other by O'Kelley through checks drawn by him alternately in his own name and in the name of the defendant was extensive and substantial. The checks drawn on plaintiff to defendant's credit at the bank at Mt. Vernon during the year 1900, were 124 representing $45,970, and during January, 1901, the amount represented by checks drawn upon the bank in Mount Vernon in defendant's name by O'Kelley in favor of plaintiff, appears to have been less than $500, while the amount drawn out of plaintiff. and deposited to the credit of defendant at the Farmers' Bank at Mount Vernon by O'Kelley aggregated $4,804.56.

On January 15, 1901, Miller first learned that O'Kelley was checking against the account kept in defendant's name at Mount Vernon and transferring funds therefrom to his private account with plaintiff, and an investigation ensued resulting in the discharge of O'Kelley from defendant's employ the following day. Miller and plaintiff's cashier differ regarding the conversations between them by telephone and face to face, concerning O'Kelley's account with plaintiff, Miller's version being to the effect that at first, believing that $40 would be sufficient to honor an unpaid check, he consented to have that amount charged against him or defendant for such purpose, while plaintiff's cashier insists that Miller agreed to make good also the checks

in suit. Be that fact as it may, Miller obtained O'Kelley's pass book of the account with plaintiff, and had it balanced and received the cancelled checks accompanying it.

Respondent urges that appellant's request for special findings, under the provisions of section 695 of the Revised Statutes, was too late, being addressed to the court after the latter had announced its finding for defendant, but as in response to this application of plaintiff, the court made and filed on the same day its written finding, the latter, in legal contemplation, was at the rendition of the judgment and in compliance with the purposes of the statute. Loewen v. Forsee, 137 Mo. l. c. 38. And answering appellant's criticism of the court's finding above quoted, it was sufficient under the statute, as on each material issue on which it appears to be silent, it may be regarded as a finding against the party holding the affirmative or burden of proof. Cochran v. Thomas, 131 Mo. l. c. 278. The rule is recognized that where a special finding has been made by the trial court, pursuant to the above statutory provision, the appellate court will not review the finding of the lower court on questions of fact in actions of law, and where there is evidence in the record tending to support such findings, they are incontrovertible on appeal. K. C., M. & B. R. R. v. Railway Co., 151 Mo. l. c. 389; Lumber Co. v. Mining Co., 78 Mo. App. l. c. 681. Under such conditions the questions open for review are errors apparent upon the face of the record and the conclusions of law. Freeman v. Moffitt, 119 Mo. l. c. 294; Sutter v. Raeder, 149 Mo. l. c. 307. The special finding herein amounted to no more and was in effect a general declaration that, under the pleadings and evidence, the plaintiff was not entitled to recover.

The testimony presented no disputed issue of fact, except as already narrated, respecting the scope of the assurances to make good outstanding checks uttered by defendant's president. The latter conceded that

O'Kelley was vested with full authority to draw checks against the account maintained by O'Kelley in the name of defendant, with the Farmers' Bank at Mount Vernon, but denied his right to apply the money of defendant to his own use. As defendant had constituted O'Kelley its agent and empowered him to execute checks in its name, no responsibility was imposed by law upon those dealing with O'Kelley in the usual course of business and in good faith for the proper application of funds belonging to his principal. If such duty had been created, or existed, it would have received full satisfaction by the transfer to defendant's credit of the proceeds of the checks in suit to defendant's account at Mount Vernon. There is no proof produced tending to show that any of the money deposited by O'Kelley in his own name with plaintiff was ever diverted or otherwise appropriated than for the benefit of defendant, indeed it appears that all the funds of this individual account, including the credits of the checks in dispute, were from time to time transferred to the account of defendant.

Defendant is precluded from affirming and ratifying O'Kelley's actions in drawing all other checks against the account at Mount Vernon, and excepting and repudiating the checks held by plaintiff, payment of which is sought to be herein enforced. The defendant, after full knowledge of all the circumstances, retained the fruits of the transactions herein sought to be evaded as unauthorized, and it can not be heard to exclude from the plenary power it conferred upon O'Kelley, his conduct in executing these unpaid checks in the hands of an innocent holder for full value. First National Bank v. Badger Lumber Co., 54 Mo. App. 327, also reported again in 60 Mo. App. 255.

The defendant's testimony failed to reveal any legal justification for non-payment of the obligations created by the checks held by plaintiff, and the cause

is reversed and remanded. *Bland, P. J.,* and *Goode, J.,* concur.

## ON REHEARING.

PER CURIAM.—On motion for rehearing in this case, respondent's counsel insist that it should not be held to pay the checks involved for the reason that O'Kelley had embezzled from respondent to the amount of $3,200, citing in support of that contention Bank v. Schaumberg, 38 Mo. 228; Bank v. Lowell, 109 Mass. 214; Bank v. South Hadley, 128 Mass. 503, and the dissenting opinions in Bank v. Lumber Company, 54 Mo. App. 327; 60 Mo. App. 255. Counsel argue that we have either overlooked those decisions or have ignored the doctrine of law they announce, which is said to be exactly in point in the present case.

We did not overlook the cases cited, but in our opinion the rule of law declared in them had no application to the facts before us. Those cases dealt with facts in which the lack of authority on the part of the agent to do the act (namely, borrow money) on which it was sought to hold his principal liable was apparent or was conceded for the purposes of the decision, and the question for decision was, whether the principal had ratified the agent's unauthorized act so as to become responsible. The ruling in the Massachusetts cases and the doctrine in the dissenting opinions in the Missouri cases was that the unauthorized act was not ratified by the retention of the proceeds of it by the principal, if the agent was a defaulter and the money was retained to make good his defalcation.

In the Schaumberg case the agent negotiated a loan in the name of his principals from a bank of which he was president, to pay his own large overdraft to said bank. In signing his principals' names to the notes given he exceeded his authority; which the bank's officers knew, as they also knew he intended to use part

of the money to make good what he personally owed the bank. The court held that the bank in effect made the loan to the agent instead of to the defendants, his principals.

In the present case there is no pretense that O'Kelley was not authorized to sign the checks in suit. Miller, the president of the lumber company, swore O'Kelley had for years full authority to sign checks in respondent's name. The only thing that O'Kelley did which is said to have been unauthorized, was depositing the proceeds of the checks in the Stotts City Bank in his own name. Now for that act to debar plaintiff from recovering, two things are necessary: first, the respondent must have lost the proceeds of the checks on account of the act; second, the appellant must have had knowledge that O'Kelley was unlawfully converting the money to his own use. Anderson v. Kissam, 35 Fed. 699. Not only is there no proof that any of appellant's officers knew O'Kelley was unlawfully converting the proceeds of the checks drawn in the respondent's name, but the undisputed fact is that O'Kelley did not convert the proceeds of these checks to his own use at all, but turned them over to the respondent company; and the court so found. Of course, the law forbids an agent to convert the funds of his principal to his own use, and a party who cashes checks drawn by an agent in his principal's name on the latter's funds, knowing that the agent intends to fraudulently misappropriate the funds, can not recover the amount of the checks. The cases cited by the respondent supporting that doctrine contain facts showing fraud on the part of the agent and participated in by the plaintiff. But the trial court found and the evidence shows, that O'Kelley accounted to the Miller Lumber Company for the money credited to him by the Stotts City Bank on the checks in controversy, instead of fraudulently appropriating it.

The contention of respondent's counsel, in its final analysis, amounts to this: Because in other transac-

tions O'Kelley had been guilty of embezzlement, the respondent company should be exonerated from paying the checks in order to partially reimburse it for the loss sustained by O'Kelley's embezzlements, although the money was not accepted by the respondent for that purpose, but was checked out of the Stotts City Bank by O'Kelley and placed to plaintiff's credit in the Farmers' Bank of Mount Vernon in the usual course of business. This, too, in the face of the fact that there is no evidence that the respondent company ever sustained a dollar of loss on account of any transactions between O'Kelley and the appellant bank and when the evidence shows positively that it sustained no loss on account of the particular transactions involved in this action. If we should accede to the contention thus preferred, it would be nothing short of making the appellant bank partly reimburse the respondent for O'Kelley's embezzlements, although it was innocent of any connection with them. These checks were drawn by O'Kelley within the scope of his authority, in the ordinary course of business, and the respondent company got the proceeds of them and ought to pay them.

The motion for rehearing is, therefore, overruled. All concur.