BANK OF BRIMSON, a Corporation, Appellant, v. ROSE ANNA GRAHAM, otherwise known as KATIE GRAHAM, OTHEL GRAHAM and SAMP HUGHES.—76 S. W. (2d) 376.

Division One, November 16, 1934.

*Geo. E. Woodruff* for appellant.

*E. M. Harber* and *Davis & Davis* for respondents.

ATWOOD, P. J.—This appeal was transferred here from the Kansas City Court of Appeals because title to real estate is involved. It grows out of a suit in equity by the Bank of Brimson, a creditor of defendant, Rose Anna Graham, to set aside a deed of trust covering forty acres of land described as the Northwest Quarter of the Southwest Quarter of Section 33, Township 61, Range 25, in Grundy County, Missouri, given by her to defendant Othel Graham as trustee for defendant Samp Hughes as beneficiary, and a quitclaim deed thereto given by her to Samp Hughes in satisfaction thereof.

The variety of contentions made by the respective parties on this appeal necessitates a comprehensive statement of the pleadings.

In its petition plaintiff alleges that it is, and at all times necessary for the purposes of this action, has been a corporation duly organized and existing under and by virtue of the laws of this State with capacity to sue and be sued therein and doing a general bank-

ing business; that "on March 23, 1927 and prior thereto, defendant Rose Anna Graham or Katie Graham was indebted to the plaintiff as evidenced by her certain promissory note dated December 18, 1926, in the amount of $691.58 bearing interest at the rate of 8% per centum per annum from date; that said indebtedness, together with the interest accrued thereon and an attorney's fee duly incurred, was reduced to judgment in the Circuit Court of Grundy County, Missouri, by judgment duly entered June 12th, 1929 in the amount of $824.95;" that on March 23, 1927, and while so indebted to plaintiff and at the time said indebtedness was incurred she was the owner of the forty-acre tract of land here in question; that on March 23, 1927, she conveyed said land to defendant Othel Graham as trustee for defendant Samp Hughes to secure a purported note given to said Hughes in the purported amount of $1500; that the said Samp Hughes is the brother of the said Rose Anna Hughes; that "on October 25, 1927 said deed was released of record by entry on the margin thereof and said purported note secured thereby produced and canceled; that on said last named date said defendant, Rose Anna Graham, by her quitclaim deed of that date, conveyed the above described property to the aforesaid Samp Hughes for a purported consideration of $1505.00;" that "on April 20, 1928 and to secure an extension of time on her obligation aforesaid to this plaintiff, defendant, Rose Anna Graham, falsely and fraudulently represented to this plaintiff that she was at that date still the owner of the above described lands;" that "all of the above conveyances were without consideration in truth and in fact and that nothing of value was given therefor or passed between the parties but were purely voluntary in character and were made, executed, delivered and accepted, with the intent of all of the parties thereto, of knowingly, intentionally and fraudulently of hindering, delaying and defrauding the creditors, present and future, of said Rose Anna Graham, and especially this plaintiff in the collection of the debt herein referred to of which all the parties to said conveyance had knowledge at the time said conveyances were made and in which intent to hinder, delay and defraud this plaintiff all of the defendants joined, aided and abetted;" that "said defendant Rose Anna Graham is otherwise insolvent and has no other property out of which the aforesaid judgment can be satisfied in whole or in part and that unless the property so fraudulently conveyed can be reached and applied to said judgment and the payment thereof, said judgment will and must remain wholly unpaid." Plaintiff further stated that it had no adequate remedy at law and prayed "for a decree adjudging that said conveyances be declared fraudulent and void as to this plaintiff; that the same be set aside and for naught held; that the property therein mentioned be held subject to the lien of plaintiff's judgment herein described

1200

and be ordered sold for the satisfaction of the said judgment of the plaintiff and that defendants be in the meantime enjoined and restrained from disposing of said property or paying out any of the proceeds thereof, or in anywise interfering therewith and for such other and further relief as to the court may seem meet and just.''

Defendant Othel Graham filed separate demurrer to plaintiff's petition which was overruled. Defendant Samp Hughes filed separate answer in the nature of a general denial, except that he admitted that ''Rose Anna Graham made him a deed of trust on said premises as in said petition stated and afterwards in satisfaction of said deed of trust made to him a deed to said premises,'' and further alleged ''that he paid full value and more for said premises and is the rightful and legal owner thereof.''

Defendant Rose Anna Graham filed separate answer in which she admitted that plaintiff is and was at all dates herein mentioned a banking corporation, that in connection with and as security for her son, J. Claire Graham, she executed, on or about December 18, 1926, a note to plaintiff bank in the sum of $691.58, and ''that judgment was obtained against her upon said note but for an amount greatly in excess of said note, interest and attorney fees to which plaintiff was entitled.''

Further answering this defendant said: ''That on the 6th day of February, 1919, there was conveyed to her and to her then husband, Tyra Graham as tenants by entirety the following lands, i. e.: The North one-half of the Southwest one-fourth of Section 33, Township 61, Range 25, Grundy County, Missouri.

''That at the time and date of such conveyance to her and her husband and as and for a part of the purchase price thereof this defendant and her said husband executed to the Grantor therein, James F. Call, a deed of trust on the whole of said lands (80 acres) for the sum of $4800 with 7% interest from date, which was indeed the full value of said lands.

''That this defendant at the time of said conveyance by said Call to herself and husband, with her said husband, took possession of said lands as their homestead and with their family, a minor daughter, Letha, age 10 years, occupied the same as homestead until the death of defendant's said husband which occurred June 25, 1925. Said lands and all thereof at no time being of value in excess of said mortgage.

''That on June 25th, 1925, upon death of said defendant's husband, the entire title of said lands subject to said mortgage upon which there was then due over $4900, she conveyed to said Call, the owner of said deed of trust, the Northeast one-half of the North one-half of the Southwest one-fourth of said lands for and in consideration of said Call releasing $4000 of said indebtedness and deed of

trust of herself and deceased husband, thus leaving the remainder of said lands, i. e. the NW¼ of SW¼ containing 40 acres in Grundy County, Mo., subject to remainder of said debt and deed of trust, to said Call the same at said time amounting to $1000 and more upon last described lands, which at said time was and is full value thereof.

"That at all the dates and times herein mentioned, since the death of her husband, June 25, 1925, defendant was and is the head of a family consisting of herself and said infant daughter, and she and her husband were heads of families at the time and for years prior to his death and defendant has and does so continue as such head of a family, her said infant daughter residing with and being solely dependent upon her for support and maintenance.

"That at the time of the death of defendant's husband he had and for about 10 years prior thereto had carried a policy of insurance upon his life and at his death payable to defendant in the sum of $2000.00 in the Bankers Life Insurance Company of Des Moines, Iowa, an assessment and beneficiary company doing business in the State of Missouri, the premiums and payments thereon being not over $50.00 per annum, and a short time after the death of her husband the amount due on this policy $2037.00 was paid defendant; that this was the only property, money, or valuables defendant then or since has had except possibly $50.00 worth of household goods.

"That with a thousand dollars and a little more of this insurance money so received by her, she paid said remaining mortgage on lands last above described in September, 1925 and caused said mortgage to be released of record, and with other of insurance money she paid funeral expenses, debts, and obligations of her deceased husband a number of which defendant alleges and avers she was not legally obligated to use said insurance money in payment of discharge of.

"That at no time was defendant seized of property mentioned or specified in Section 1611, R. S. 1919, exempt when owned by the head of a family as she is and was at all times mentioned in plaintiff's petition and so defendant says that while her brother Sam Hughes paid and advanced to her the full value and more of said 40 acres of land she had, under the circumstances and by reason of the facts aforesaid a perfect right to sell, give away or dispose of said lands as she saw fit and this too without giving plaintiff any right, in equity or otherwise to complain thereof or for relief sought or any relief whatever and hence defendant prays plaintiff's petition be dismissed and it be adjudged to take nothing by said action and for costs.

"Defendant further answering says that she denies each and every allegation in plaintiff's petition stated except the execution of the note for $618.58, and that Othel Graham is her son and Sam Hughes is her brother.

"WHEREFORE, she prays to be discharged with costs."

■ Thereupon plaintiff filed motion to strike out certain portions of Rose Anna Graham's answer. The record before us does not show that this motion was ever actually ruled. For this and another reason, which will presently be noted, the motion drops out of the case.

At the conclusion of all the evidence the case was taken under advisement and appellant's bill of exceptions shows that further proceedings were had therein as follows:

"And on the 17th day of January and during the regular December term, 1930, of said court the matter was argued orally before the court by respective counsel for the parties and the court in open court announced that he deemed the land, referred to in the evidence, the subject of the conveyances sought to be set aside, exempt from execution by reason of the fact that the defendant Rose Anna Graham had paid off an encumbrance thereon out of the proceeds of the insurance policy referred to in the evidence and that therefore the plaintiff's Motion to Strike portions of said defendant's answer should be overruled and judgment be for defendants and caused to be entered of record the following judgment:

"Now on this 17th day of January this cause comes on again to be finally heard and determined and the court having had the matter under advisement and consideration and being now fully advised in the matter does find that judgment should be for the defendants.

"To which action and ruling of the court in so holding said property exempt, overruling said motion to strike and in rendering said judgment the plaintiff then and there excepted and saved its exceptions."

Thereupon, plaintiff filed motion for a new trial, stating therein the following reasons:

"That said judgment and finding of the court is against the evidence and against the law under the evidence.

"That the court erred in overruling plaintiff's Motion to Strike out portions of defendant Rose Anna Graham's answer.

"That the court erred as above stated in its judgment in finding and holding that the exemption of insurance money extended and attached to property on which an encumbrance had been paid off with said money as against plaintiff's debt contracted subsequent to the payment of said encumbrance on said property and that being exempt from such debt a conveyance thereof could not be deemed in fraud of plaintiff."

Plaintiff's motion for a new trial was overruled, whereupon plaintiff perfected this appeal.

The record before us further shows the following order of the trial court entered in said cause on September 14, 1931, before said bill of exceptions was signed and allowed:

"Now on this day comes plaintiff aforesaid and files and presents to this court its stipulation for the amendment of the judgment record in this cause *nunc pro tunc* and it appearing to the court the clerk has failed to enter the judgment of this court as rendered on the 17th day of January, 1931, and it further appearing to the court from the files, record, judge's docket, and papers in the case that final judgment was rendered therein on the date aforesaid in favor of the above named defendants and against the plaintiff, it is therefore,

"Ordered and adjudged that the record of said judgment be and the same is amended *nunc pro tunc* as of the date of January 17, 1931, to read as follows:

"Now on this 17th day of January, this cause comes on again to be finally heard and determined and the court having had the matter under advisement and consideration and being now fully advised in the matter does find that judgment should be for the defendant.

"It is therefore considered, adjudged and decreed by the court that plaintiff take nothing by its bill and that the same be and is hereby dismissed and that defendants and each of them go hence without delay and have and recover of plaintiff their costs laid out and expended and have therefor execution."

Appellant's assignment of errors is as follows:

"1. The court erred in overruling plaintiff's Motion to Strike Out Portions of Defendant, Rose Anna Graham's Answer.

"2. The court erred in holding that the property was exempt from execution by reason of the incumbrance being paid off out of insurance funds and that hence a conveyance thereof could not be fraudulent.

"3. The court erred in so holding and in therefore failing to pass on the merits of the case and to render judgment on the merits for plaintiff.

"4. The court erred in admitting, over, the objection of plaintiff, incompetent, irrelevant and immaterial evidence and in excluding, over the same objection, competent, relevant and material evidence offered by plaintiff."

Assigned errors 1 and 4 are not included in appellant's specification of points relied on, as required by our Rule 15. Hence, they will be treated as abandoned.

A careful study of the pleadings and evidence discloses that the issues were: first, whether on the conceded facts the land in question was exempt as a matter of law by reason of the payment of the balance of the purchase money incumbrance on the land with the

proceeds of the insurance money; and, second, if not so exempt, whether under all the evidence the conveyances herein sought to be set aside were fraudulent as to plaintiff.

The points enumerated and relied on in appellant's brief are five. The first point is: "This matter is one in equity, triable *de novo* by this court, without the aid of any findings by the chancellor." The second is: "The trial court erroneously held that the land was exempt and consequently a conveyance therefor could not be set aside as fraudulent." The last three points deal in certain respects with the issue of fact as to whether or not, if the land is not exempt, the conveyances here in question under all the evidence were fraudulent as to plaintiff.

Counsel for respondents insist there is nothing before us for review because, they say, these points do not come within the reasons stated in plaintiff's motion for a new trial. This motion is hereinabove set forth and we think the first and third paragraphs thereof were sufficient to suggest to the trial court the points specified and relied on in appellant's brief. This being an equity case the weight of the evidence may be considered on appeal and we would not be bound by any conclusions reached by the chancellor either as to the facts or the law. In such cases we do defer somewhat to his conclusions as to the facts because he is in better position to determine the credibility of witnesses who testify in his presence, but appellant, though contending that the chancellor failed to consider the questions of fact involved in the second issue made by the pleadings, claims no present right to the chancellor's view thereon and insists that we pass upon the same in this appeal. The appeal being thus presented the judgment must stand in favor of defendants if supported by the law and the evidence on either one or both of the issues mentioned, but we can think of no good reason why under plaintiff's motion for a rehearing its points specified and relied upon as challenging such support are not properly here for our consideration.

The evidence was undisputed that respondent widow, shortly after her husband's death, received $2037 from an assessment plan life insurance policy issued upon the life of her husband in which she was named as beneficiary; that out of the money so received she paid off the balance of the purchase money against the forty acres here in question, said balance then consisting of eight hundred dollars principal indebtedness and some accumulated interest, leaving this forty acres clear of indebtedness; that its value does not exceed the amount so paid by her; that thereafter she signed as security for her son Claire Graham the note upon which plaintiff sued her and obtained judgment, this note being a renewal of a note signed by her husband in his lifetime as security for Claire; and that the $1500 note to Samp Hughes and the conveyances herein sought to be set aside were

executed and delivered by her after she signed the note to plaintiff and before judgment was obtained against her thereon.

Counsel for respondents claim exemption of the land in question under Section 5752, Revised Statutes 1929, relating to insurance on the assessment plan, which is as follows:

"The money or other benefit, charity, relief or aid to be paid, provided or rendered by any corporation authorized to do business under this article, shall not be liable to attachment or other process, and shall not be seized, taken, appropriated or applied by any legal or equitable process, nor by operation of law, to pay any debt or liability of a policy or certificate holder, or any beneficiary named in a policy or certificate."

It is insisted in behalf of respondents that the foregoing express exemption of "money or other benefit, charity, relief or aid to be paid, provided or rendered" should be construed to embrace other property in which the money, etc., so paid the beneficiary is thereafter invested; that payment by defendant widow out of the proceeds of her insurance of the balance of the purchase money indebtedness against the land in question, it being undisputed that the value of said land did not then and does not now exceed the amount so paid, is tantamount to a purchase of said land with said insurance money and an investment of the same therein, and that such land is, therefore, exempt from respondent widow's indebtedness to appellant.

In support of this view counsel for respondents cite Holmes v. Marshall, 104 Am. St. Rep. 86, 88, 91, 92, 145 Cal. 777, 79 Pac. 534; Yates County Natl. Bank v. Carpenter, 16 Am. St. Rep. 855, 857, 119 N. Y. 550; Crow v. Brown, 81 Iowa, 344, 350; Dean v. Clark, 81 Iowa, 753; Fayette County v. Hancock, 83 Iowa, 694; Marquardt v. Mason, 87 Iowa, 136; Cook v. Allee, 119 Iowa, 226; and Surace v. Danna, 161 N. E. 315, 248 N. Y. 18.

Considering the above cases in their order, we find that in Holmes v. Marshall, the statutory exemption involved was: "All moneys, benefits, privileges, or immunities accruing or in any manner growing out of any life insurance, if the annual premiums paid do not exceed five hundred dollars," etc. The only holding in anywise pertinent to the question here under consideration was that where the proceeds of life insurance which are exempt from execution are deposited in bank by the beneficiary the right of exemption is not thereby lost.

The opinion in Yates County Natl. Bank v. Carpenter, purports to deal with a statute which "provides, in terms, for the exemption of money, or its equivalent," and the property held exempt was a home for the head of a family purchased with proceeds of his pension received from the United States.

In Crow v. Brown, the property held to be exempt was a homestead purchased by a pensioner of the United States with pension funds and occupied by him as a home for himself and family. The opinion indicated that this ruling was necessary "if force and effect is to be given to that clause of the act of congress which provides that pension money 'shall inure wholly to the benefit of the pensioner.' " Dean v. Clark, Fayette County v. Hancock and Marquandt v. Mason, are cases involving pension money or other property purchased with pension money and rest on the reasoning announced in Crow v. Brown.

In Cook v. Allee, the statutory provision for construction was: "The avails of all policies of life or accident insurance payable to the surviving widow shall be exempt from liability from all debts of such beneficiary contracted prior to the death of the assured." The court held that a house and lot purchased by a surviving widow with proceeds of such insurance were exempt under this statute.

The statute construed in Surace v. Danna, was the following portion of the Workmen's Compensation Law of New York: "Compensation or benefits due under this chapter shall not be assigned, released or commuted except as provided by this chapter, and shall be exempt from all claims of creditors and from levy, execution or attachment or other remedy for recovery or collection of a debt, which exemption may not be waived." The court held that such compensation received by an injured employee and placed on deposit is exempt under this statute.

The decided weight of authority is that the Federal statute exempts pension money only while due or to become due the pensioner (17 Ann. Cas. 1192), and the rule announced in Yates County Natl. Bank v. Carpenter, supra, and Crow v. Brown, supra, was condemned in McIntosh v. Aubrey, 185 U. S. 122.

In Recor v. Bank, 142 Mich. 479, 7 Ann. Cas. 754, the Supreme Court of Michigan construed a statute cast in almost the identical language of our own Section 5752, supra, except that our statute does not exempt such funds from taxation, and held that it applied to insurance money only before it has been paid over to the beneficiary, and therefore did not exempt from garnishment money which had been paid as a benefit to the beneficiary and had been deposited by her in the bank. [See, also, Bull v. Case, 165 N. Y. 578; Hathorn v. Robinson, 96 Me. 33; Martin v. Martin, 187 Ill. 200; Coleman v. McGrew, 71 Neb. 801; J. S. Merrell Drug Co. v. Dixon (Ky.), 24 L. R. A. (N. S.) 1018, 115 S. W. 179; Pefly v. Reynolds, 115 Kan. 105, 222 Pac. 121; Martin v. Lamb, 228 Mich. 396, 200 N. W. 160; Reiff v. Armour & Co., 79 Wash. 48, L. R. A. 1915A, 1201; Knabb v. Drake, 23 Pa. St. 489, 62 Am. Dec. 352; Estate of Ferguson, 140 Wis. 583, 17 Ann. Cas. 1189.] It is also worthy of note that in Surace

v. Danna, supra, cited by respondents, the court adhered to its ruling in Bull v. Case, supra, which is really in point and contrary to respondents' contention in the instant case.

In passing it may be observed that this is not a case where exempt funds have been invested in other property exempt under the statute, as in Cullen v. Harris, 111 Mich. 20, 66 Am. St. Rep. 380, and Tally v. Palmer, 112 Kan. 391. There is no plea that the land in question was exempt as a homestead, nor was the case tried on any such theory.

■ An exemption statute is to be liberally construed to effectuate its intention and purpose (Prouty v. Hall (Mo. App.), 31 S. W. (2d) 103, 105; Megehe v. Draper, 21 Mo. 510, 511; Mahan v. Scruggs, 29 Mo. 282, 285; State to use Houseworth v. Dill, 60 Mo. 433, 435), but "it should not be understood that the debtor has any more claim to have it extended in his favor to cases that were not contemplated by the Legislature than the creditor has to have it extended in like manner in his own favor." [11 R. C. L., p. 494.] As said in Caldwell v. Ryan, 210 Mo. 17, 30, 31, 108 S. W. 533: "The statute of exemption was made to cover as with a shield what the unfortunate debtor has in his possession when the officer comes with a writ to take it from him; it was not made to arm him as with a sword to levy contribution on his neighbor." In 6 American Law Reports, page 610 (note on State ex rel. Lankford v. Collins (Okla.), 174 Pac. 568) it is pointed out that there is sharp conflict of authority upon the question whether under a form of statute such as our own, the exemption survives the payment of the benefit by the insurer. True, the above-stated majority rule that it does not has been liberalized in such cases as Holmes v. Marshall, supra, and Emmert v. Schmidt, 65 Kan. 31, 68 Pac. 1072, to the extent that such exempt money though received and deposited in bank by the beneficiary is held still exempt, but we have found no persuasive authority holding that under such a statute the money may be invested in other property not exempt and such statutory exemption be extended thereto. Had the Legislature so intended it might easily have said so. Despite an apparent analogy between the instant case and Cook v. Allee, supra, we decline to follow the latter. The evils of such judicial legislation are suggested at length in cases above cited and we find no warrant for indulging therein. Consequently, this issue is ruled against respondents.

■ On the remaining issue of fraud or no fraud in the latter conveyances of this nonexempt property, while it may be of no consequence as this appeal is presented, we are unable to say from the record before us that the facts pertinent thereto were not considered and found in favor of respondents. The chancellor made no special finding of fact, as he might have done upon request of either party under Section 952, Revised Statutes 1929 (Blount v. Spratt, 113 Mo. 48, 53, 20 S. W. 967; Miller v. McCaleb, 208 Mo. 562, 572, 573, 106

S. W. 655; Lesan Adv. Co. v. Castleman, 265 Mo. 345, 352, 177 S. W. 597; Gaines & Co. v. Whyte Grocery Co., 107 Mo. App. 507, 532, 81 S. W. 648), or under the ancient chancery practice authorizing the making and incorporation of such in the decree of the court's own motion. [Patterson v. Patterson, 200 Mo. 335, 98 S. W. 613.] The only finding in the record is the court's general finding "that judgment should be for defendants," and this warrants the conclusion that the court found all issuable facts for defendants. [Jordan v. Buschmeyer, 97 Mo. 94, 98, 10 S. W. 616; Cochran v. Thomas, 131 Mo. 258, 33 S. W. 6; Singer Mfg. Co. v. Stephens, 169 Mo. 1, 10, 68 S. W. 903; Prendergast Const. Co. v. Goldsmith, 201 S. W. 354, 357, 273 Mo. 184; Stotts City Bank v. Miller Lumber Co., 102 Mo. App. 75, 82, 74 S. W. 472; Fisher v. Drew, 247 Mass. 178, 141 N. E. 875, 30 A. L. R. 798; 64 C. J., sec. 1079, n. 34, p. 1236, sec. 1080, p. 1236.] Neither was the chancellor's voluntary remark, that he deemed the land in question exempt, a statutory conclusion of law or one incorporated in the judgment and decree in accordance with the chancery practice. Even if it had fallen within either classification, this being an equity case, the conclusion of law would not be binding upon an appellate court (Noell v. Remmert, 326 Mo. 148, 157, 30 S. W. (2d) 1009), and refusal of declarations of law and findings of fact would not have been error. [Parish v. Casner (Mo.), 282 S. W. 392, 413.] It is not even a reliable indication of the theory on which the chancellor decided the case because it is not incompatible with the presumption, flowing from the general finding for defendants, that the court considered all the evidence and found that the conveyances in question were not fraudulent as to plaintiff even if the land in question was not exempt. Moreover, strictly speaking, no such point is before us because in its motion for a new trial plaintiff did not assert that the chancellor ruled the case solely on the question of law involved in the first issue and failed to consider, find and rule the facts pertinent to the second issue. [In re Estate of Kellam v. Misner, 53 S. W. (2d) 401, 404, 227 Mo. App. 291.]

Turning to appellant's points urged on the merits of this issue, we find the contention made that because the deed of trust purported to secure a note for the principal sum of $1500 while defendants' proof tended to show an actual consideration of only $1200, the entire consideration must be deemed fictitious and both the deed of trust and the quitclaim deed given in satisfaction thereof held fraudulent. The actual consideration shown by defendants was in excess of the highest value placed on the land. The doctrine applicable in such case is thus stated in Wall v. Beedy, 161 Mo. 625, 641, 61 S. W. 864: "The mere fact that the consideration expressed in the deed is $6,750, instead of the exact amount of the debts paid and assumed is, under the circumstances of this case, wholly immaterial,

as the debts paid and assumed by Beedy exceeded the highest value placed upon the farm, by any of the witnesses testifying in the case. It would seem, therefore, that the recited consideration in no wise affected the validity of the transfer.'' The facts and rulings thereon in cases cited by appellant are distinguishable from the instant case and the case above cited. This point is ruled against appellant.

The next point urged in behalf of appellant is: ''There need be no direct and positive evidence of fraud. Its existence can be determined from the facts and circumstances denominated 'badges of fraud.' '' We find no fault with these abstract statements of law, but after a careful study of all the evidence we conclude that they are without application. While some of the transactions in evidence are not in accord with the usual course of business under normal conditions, under the circumstances shown they are not inconsistent with honesty and fair dealing and a general finding for defendants.

Appellant's last point is: ''Where badges of fraud exist they make out a case or at least cast the burden on defendants to prove the bona fides of the transaction by clear, cogent, satisfactory and convincing evidence.'' It has been uniformly held by the appellate courts of this State that the burden of proof always rests upon the party assailing a transaction for fraud. [Wall v. Beedy, 161 Mo. 625, 640, 61 S. W. 864; Stahlhuth v. Nagle, 229 Mo. 570, 581, 129 S. W. 687.] Cases may be found holding that in the case of a mere purchaser from a fraudulent grantor, where the fraudulent purpose of the grantor is shown, it is then incumbent upon the purchaser to show payment of the consideration and the good faith of the transaction, but we do not believe the facts before us present such a case.

For the reasons above stated the judgment is affirmed. All concur.